## Bunn's Appeal.
## Lane's Appeal.

|     |     |
| --- | --- |
| 105 | 49 |
| 133 | 572 |
| 105 | 49 |
| 139 | 217 |
| 105 | 19 |
| 144 | 60 |
| 105 | 49 |
| 198 | 72 |
| 198 | 74 |

1. Upon the insolvency of a moneyed corporation its uncalled and unpaid capital stock constitutes a trust fund for the benefit of all its creditors, and will be administered as such.

| 105 | 49 |
| --- | --- |
| 19 SC | 481 |

2. Where such a corporation, incorporated under the provisions of the Act of April 29, 1874 (P. L., 73), becomes insolvent, a bill in equity will lie at the instance of judgment creditors of said corporation to collect such part of the unpaid and uncalled subscriptions to the capital stock as is necessary for the satisfaction of their debts.

| 105 | 49 |
| --- | --- |
| 212 | 167 |
| 105 | 49 |
| 215 | 91 |

3. The personal liability to creditors for work or labor done or materials furnished, imposed by section 14 of the Act of April 29, 1874 (P. L., 73), upon the stockholders of corporations chartered under the provisions of said Act, is not the sole liability which such creditors may enforce for the satisfaction of their debts. They may also, by appropriate process, enforce for their benefit the liability existing on the part of the stockholders to the corporation to pay uncalled and unpaid subscriptions to capital stock.

4. The provisions of section 7 of the Act of April 29, 1874 (P. L., 73), as to the immunities and liabilities of a transferee of stock, are not to be considered as imposing a special liability, but merely as fixing a status. Hence the liability of a transferee of stock to the corporation to pay up to the par value thereof is not to be regarded as a special liability to be enforced for the benefit of creditors in the manner specified in section 15 of the said Act.

9 OUTERBRIDGE.—4.

5. The liabilities to be enforced in the mode pointed out in section 15 of the Act of April 29, 1874 (P. L., 73), are only those special personal liabilities to pay particular debts created by the other sections of the Act.

6. In case of the insolvency of a corporation, unpaid and uncalled amounts due upon the capital stock cannot be attached by a judgment creditor of the corporation by means of an attachment execution; upon insolvency the uncalled and unpaid subscriptions constitute a trust fund, which will be administered for the benefit of all the creditors.

7. A corporation incorporated under the Act of April 29, 1874 (P. L., 73), became insolvent, and made an assignment for the benefit of its creditors; certain creditors of the company, one of whom was a judgment creditor upon whose judgment a fi. fa. had been issued and returned "nulla bona," thereupon filed a bill in equity against the corporation. its assignee and its stockholders, some of whom were original subscribers, and others assignees of the stock. The bill set out the foregoing facts, and also alleged that there were no corporate assets to satisfy their debts, and that forty per cent. remained uncalled and unpaid on the capital stock of the corporation. The bill prayed for an account; an assessment upon the stockholders of such part of the sums remaining due upon their capital stock as would pay complainant's claims in full; a decree that such sums be paid; and the appointment of a receiver:

*Held*, that the bill in equity was properly framed and used, and that complainants were entitled to the relief sought.

January 15, 1884.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEALS from the Court of Common Pleas No. 4, of *Philadelphia county:* In Equity: Of July Term, 1883, Nos. 24 and 30.

These were appeals by William M. Bunn and David H. Lane from a decree of said Court on a creditor's bill, fixing the liability of the appellants as stockholders in the Philadelphia and Susquehanna Blue Stone Company, and directing that they pay certain sums found to be due and unpaid by them upon their subscriptions to the capital stock of said company.

Bill in equity, filed November 18, 1881, wherein by amendment John Maxwell, Hiram Dunn and others were complainants, and the Philadelphia and Susquehanna Blue Stone Company, William F. Johnson, assignee thereof for the benefit of its creditors, William M. Bunn, David H. Lane et al. were defendants.—

The bill set forth—

1. That the Philadelphia and Susquehanna Blue Stone Company was duly incorporated on or about December 14, 1874, under the general Act approved 29th April, 1874, and letters patent were duly issued by the Governor, and the charter was duly recorded in Philadelphia county.

2. That the capital stock of said corporation was divided into two hundred and forty shares of the par value of $100 each, and recited the names of the original subscribers, and of certain assignees, with a list of the defendants, stockholders at the filing of the bill, with the number of shares held by them respectively.

3. The bill charged that, by force and virtue of the statute under which the corporation was incorporated, such of the defendants as were and are assignees of the stock, became subject to all the liabilities, conditions and penalties incidental thereto in the same manner as the original subscribers would have been.

4. That prior to April 28, 1876, various calls and assessments were duly made upon the capital stock of the corporation, amounting in the aggregate to sixty per centum of the par value thereof, the last call having been made on April 10, 1876. Only a portion of this sixty per centum, thus called for, had been paid, and the remaining forty per centum of the par value of the stock had never been called for, nor paid. The bill then recited the balances of subscriptions for which it is claimed that the several defendants are now respectively liable.

5. That the complainants are creditors of the corporation defendant thereto, for wages, work and labor done, and materials furnished, and the amounts now due them are scheduled in "Exhibit A," annexed to the bill.

5½. The complainant, John Maxwell, is a judgment creditor of the Philadelphia and Susquehanna Blue Stone Company, having on April 29th, 1879, in the Court of Common Pleas, No. 2, of Philadelphia county, of September term, 1876, No. 900, recovered judgment against the said corporation in the sum of $7,036.93, which still remains unpaid. A writ of fieri facias upon the said judgment has been issued against the corporation aforesaid and returned nulla bona.

6. That on the 28th April, 1876, the corporation defendant became insolvent, and executed and delivered an assignment for the benefit of its creditors, duly recorded, to the defendant, William F. Johnson, who duly accepted the same, and filed his first account in 1878. An auditor, appointed to audit said account and report distribution, reported that the claims of the complainants, as stated in said "Exhibit A," were just and valid. The report of said auditor was duly confirmed.

7. The complainants charged that the said corporation is wholly insolvent and has no available assets, other than the balances due upon its capital stock, wherewith to pay its creditors. That neither the said corporation nor the assignee thereof has hitherto taken any steps to enforce payment from

the stockholders, defendants thereto, of the unpaid subscriptions which had been duly assessed upon the capital stock and called for prior to the assignment; nor has the corporation or its officers since taken other or further steps to assess or call for such additional portions of the unpaid subscriptions, as is necessary to liquidate the indebtedness of the corporation, but, on the contrary, they have utterly neglected and refused so to proceed.

8. That the complainants are advised and believe, and so aver, that unpaid subscriptions to the capital stock of an insolvent corporation constitute a trust fund for the benefit of its creditors, and that they are entitled to have the whole amount of the said fund, or such portion thereof as shall be necessary to discharge their claims, and the claims of such other creditors as might become parties to the bill, applied to this purpose; and upon the neglect of the corporation so to apply the fund, that the court will administer the trust by causing an assessment to be levied upon the stockholders defendants for the amount of their respective unpaid subscriptions, and compelling a proper application of the same, in such manner and form as might seem just and equitable.

The bill prayed—

1. That the rights of the parties be declared in the premises.

2. That an account be taken of the amounts remaining unpaid upon the capital stock of the corporation defendant; and upon such accounting, that the stockholders defendants may be decreed to pay the amounts respectively due by them, which had been previously assessed and called for by the corporation defendant, or so much thereof as may be necessary to discharge the ascertained debts of the corporation.

3. That an assessment be levied, in such manner and form as the court may direct, for the balances not previously called for and remaining unpaid upon the capital stock of the said corporation, respectively held by the stockholders defendants thereto, or so much thereof as may be necessary to pay the ascertained debts of the said corporation, and that thereupon the said stockholders defendants may be decreed to pay such respective balances so, as aforesaid, assessed.

4. That a receiver be appointed to collect and receive all and singular the assets, books, papers and other property of the said corporation, and also all sum or sums due by the said defendants, or any of them, stockholders in the corporation aforesaid, for the unpaid balances on the capital stock of said corporation, held by them, or such part or parts thereof as may be necessary and sufficient to liquidate the ascertained indebtedness of said corporation, together with such other powers and duties as the court may deem just and equitable.

5. General relief.

Answers were filed, and the cause was referred to an examiner, who took testimony, and subsequently to a master (Hampton L. Carson, Esq.,) whose finding of facts was, inter alia, as follows:

The Philadelphia and Susquehanna Blue Stone Company was duly incorporated on the 14th day of December, 1874, under the laws of Pennsylvania. The charter was duly enrolled and recorded. The capital stock was fixed at twenty-four thousand dollars, divided into two hundred and forty shares of the par value of one hundred dollars per share. Ten per cent. thereof was paid in cash as provided for by law. The corporation is wholly insolvent, and made an assignment for the benefit of creditors on the 28th April, 1876, which was duly recorded. The assignee accepted the trust, and filed one account, which was referred to an auditor, and the fund distributed. The creditors presenting their claims were only partially paid.

The master then presented a list of the stockholders at the date of the assignment, among whom were David H. Lane and William H. Bunn, who each held twenty shares of stock. On 10th April, 1876, there was an assessment of twenty-five per cent. called for by the directors.

The following amounts have been paid by the stockholders, defendants, or their transferors,—

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

David H. Lane, on twenty shares, has paid........$1200 00
Wm. M. Bunn, "　　"　　"　　"　　........ 1200 00

Since the assignment there have been no calls made by the directors. Each stockholder owes forty per cent. of his stock, which has never been called for; some owe sixty-five per cent.

It was charged in the bill, and not denied in the answers, that the directors have neglected and refused to make further assessments or calls.

The master then stated the several amounts in which the complainants are creditors of the corporation. Maxwell is a judgment creditor also, whose judgment was recovered December 19, 1881. On this a fi. fa. issued, returnable to the first Monday of January, 1882, which was returned "nulla bona."

Upon these facts it was contended before the master by the stockholders, defendants, that the complainants were not entitled to the relief sought, because (1.) The provisions of section 15 of the Act of April 29, 1874, must be strictly pursued, and could alone be invoked by creditors of a corporation in a suit against the stockholders thereof. (2.) Complainants had an adequate remedy at law by attachment execution.

The master overruled both objections, and reported that the

complainants were entitled to a decree in accordance with the prayers of the bill, and that a receiver be appointed to collect the amounts due by the defendants.

Exceptions filed by the various defendants to the master's report were overruled by the court, (no opinion filed) and the following decree, as reported by the master, was entered as the decree of the court:—

"And now this 31st day of March, 1883, . . . . . it is ordered, adjudged and decreed that the defendants are respectively liable to the Philadelphia and Susquehanna Blue Stone Company for the unpaid balance upon capital stock of the said corporation now held by them, as follows:

\*      \*      \*      \*      \*      \*      \*      \*

W. M. Bunn is liable to the amount of,..............$1,024
David H. Lane    "      "      "      ..............  800

"And it is further ordered and decreed that Tunis W. Van Holsen be appointed receiver of the Philadelphia and Susquehanna Blue Stone Company.   \*   \*   \*   \*   \*   \*

"And it is further ordered that the above named defendants do respectively pay unto the said receiver the several amounts for which they have been adjudged liable as aforesaid. And that upon said payment the said defendants be respectively discharged from any and all further liability to the said corporation by reason of their said stock.

"And it is further ordered that the defendants pay the costs of these proceedings."

The defendants, William M. Bunn and David H. Lane, thereupon took these appeals, assigning for error the dismissal of their exceptions to the master's report, and the above decree.

*James H. Shakespeare* (*A. A. Grace* and *James H. Heverin* with him), for appellants.—The transferee of stock cannot, without express statutory authority, be made individually liable for an unpaid assessment, called after his acquisition of the stock. The only remedy is by forfeiture of the stock. Canal Company *v.* Sansom, 1 Binney, 70; Pittsburgh & Connellsville R. R. *v.* Clarke and Thaw, 5 Casey, 146; Palmer *v.* Mining Co., 10 Casey, 288; Franks Oil Company *v.* McCleary, 13 P. F. S., 317; Messersmith *v.* Bank, 15 Norris, 440; Coal Company *v.* Otterson, 4 W. N. C., 545. The seventh section of the general corporation Act of 1874 subjects the transferee of stock of corporations organized under its provisions to all the liabilities of an original subscriber. And the fifteenth section provides a full and adequate mode of procedure to enforce any liability arising under the provisions of this Act, thereby precluding the creditor from enforcing his rights in any other manner. Patterson *v.* Lane, 11 Casey, 275; Act of

March 21, 1806, P. L., 569; Suydam *v.* The Insurance Co., 1 Smith, 394; Hoard *v.* Wilcox, 11 Wright, 57, 58; Brinham *v.* The Coal Company, 11 Wright, 43; Youghiogeny Shaft Co. *v.* Evans, 22 P. F. S., 334; Means' Appeal, 4 Norris, 75. The liability imposed by section fourteen of the Act of 1874, was the only one available against appellants; it could be enforced only in the method specified in section fifteen.

The complainants had a full and complete remedy by attachment execution. *In re* Glen Iron Works, Bankrupt, 13 W. N. C., 387. Stock subscriptions are ordinary debts, and may be attached in the same manner as other debts. Peterson *v.* Sinclair, 2 Norris, 250; Pittsburgh and Connellsville R. R. Co. *v.* Byers, 8 Casey, 22; McCully *v.* Pittsburgh and Connellsville R. R., 8 Casey, 31; Pittsburgh and Connellsville R. R. *v.* Clarke and Thaw, 5 Casey, 151; Graff *v.* Railroad Co., 7 Casey, 493; Ogilvie *v.* Insurance Co., 22 Howard, 387.

*Lawrence Lewis, Jr.,* and *Angelo T. Freedley (Edward Shippen with them),* for appellees.—A general equitable jurisdiction exists, on the behalf and at the instance of creditors of an insolvent corporation, to enforce the payment of unpaid and uncalled subscriptions to capital stock. For, in equity, insolvency matures the subscriber's liability, even when dependent upon a condition precedent, and turns the indebtedness into a trust fund to be administered for the benefit of the creditors, so as to preserve as well the equities of the stockholders *inter se,* as the relative rights of the creditors. Bank of Virginia *v.* Adams, 1 Pars. Eq., 534; Wilbur *v.* Stockholders, 35 Leg. Int., 346; Stang's Appeal, 10 W. N. C., 409; Aultman's Appeal, 2 Out., 505; Miller's Appeal, 39 Leg. Int., 72; Henry *v.* Vermillion, etc., R. Co., 17 Ohio, 187; Ogilvie *v.* Knox Ins. Co., 22 How., 380; Marsh *v.* Burroughs, 1 Woods, 463; Hatch *v.* Dana, 101 U. S., 205; Hawley *v.* Upton, 102 U. S., 314; Thompson, Liability of Stockholders, section 258; Holmes *v.* Sherwood, 16 Fed. Rep., 725; Patterson *v.* Lynde, 1 Sup. Court Rep., 432. In Pennsylvania this jurisdiction has been frequently exercised, and is applicable to corporations chartered under the general corporation Act of 1874. Bank of Virginia *v.* Adams, 1 Pars. Eq., 534; Wilbur *v.* Stockholders, 35 Leg. Int., 346; Stang's Appeal, 10 W. N. C., 409; Aultman's Appeal, 2 Out., 505; Miller's Appeal, 39 Leg. Int., 72. Sections fourteen and fifteen of the general corporation Act should be read together, as imposing on the stockholders an additional personal liability as to laborers, in derogation of the common law, and it exists whether the stock be or be not fully paid up, while the present suit is to enforce a liability to the corporation, limited by the amount

unpaid upon each share held. Patterson *v.* Wyomissing, 4 Wright, 117; Loan Society *v.* Lichtenwalner, 4 Out., 104; Adler *v.* Milwaukee Co., 13 Wis., 57; Mann *v.* Pentz, 3 Comstock, 415. And the ordinary equitable jurisdiction to enforce the payment of unpaid instalments on the capital stock of an insolvent corporation is not thereby ousted. Peterson *v.* Sinclair, 2 Norris, 250; Miller's Appeal, 39 Leg. Int., 72. The suggested remedy by attachment execution is inadequate, in that it settles nothing except the creditor's individual rights against the corporation, and is not such a clear, adequate and perfect legal remedy as will affect the appropriate equitable jurisdiction. Wesley Church *v.* Moore, 10 Barr., 273; Kirkpatrick *v.* McDonald, 1 Jones, 387; Bank of the United States *v.* Biddle, 2 Pars. Eq., 32; Skilton *v.* Webster, Bright, 233; Weir *v.* Mundell, 3 Brews., 594.

Mr. Justice GREEN delivered the opinion of the court, February 25th, 1884.

In this case a bill in equity was filed by certain creditors of the Philadelphia and Susquehanna Blue Stone Company, suing as well for themselves as for all other creditors who might become parties thereto, against the company and the holders of its capital stock, for the purpose of compelling the payment of the unpaid capital stock by the stockholders in order that the same might be applied to the payment of the debts due the plaintiffs. The bill alleged, and the master found, that the defendant company was incorporated under the general corporation law of April 29th, 1874, that the capital stock was fixed at $24,000, divided into 240 shares at $100 each, that a part only of the stock had been paid in, that the defendants were stockholders at the time of the assignment made by the company for the benefit of its creditors, and were indebted to the company in certain sums, which are set forth in detail, for their unpaid subscriptions to the capital stock, that the company was wholly insolvent, and all its available assets, except the balances due upon its capital stock, exhausted; that neither the company nor its assignee had made any call or assessment upon the stockholders to pay in the unpaid portion of the capital stock, but, on the contrary, had refused to do so, and that payment of such unpaid balances of the capital stock, or of some part thereof, was necessary for the payment of the debts due the plaintiffs. The bill prayed for an account of the amounts remaining unpaid upon the capital stock, and for a decree that the stockholders pay whatever amounts were due by any of them upon previous assessments, and also that an assessment be levied for so much of the balances due, and not previously

called for, as might be necessary to pay the ascertained debts of the corporation, and prayed also for the appointment of a receiver to whom the monies collected should be paid, and for general relief. Most of the matters alleged in the bill were admitted in the various answers filed, and such as were material and not admitted were found by the master. The debts due the plaintiffs were ascertained to be upwards of $8,000, of which the sum of $7,036.93 was due to John Maxwell, who had obtained judgment for the same. The amounts of unpaid capital stock were in the neighborhood of $10,000, the whole of which was decreed to be paid to a receiver.

The chief contention before the master, as in this Court, was upon the liability of the stockholders in this proceeding. It was contended, on behalf of the defendants, that they could not be called upon by bill in equity, as proposed in this case, for two reasons: First. Because the complainants have a complete and adequate remedy at law specifically provided by the Act of 29th April, 1874, under which the company was incorporated; and, Second. That the plaintiff, John Maxwell, the principal creditor, had a complete and adequate remedy by attachment in execution upon his judgment.

We will consider these defences separately and in their order.

The remedy at law which it is said could be resorted to by the plaintiffs is that which is provided by the fourteenth and fifteenth sections of the Act of 1874. The fourteenth section is, so far as it relates to the present controversy, in the following words, viz.: " The stockholders in each of said corporations shall be liable in their individual capacity to the amount of stock held by each of them, for all work or labor done, or materials furnished, to carry on the operations of each of said corporations." The fifteenth section provides the method of proceeding to enforce the liabilities created by the fourteenth.

It will be perceived at once that the liability established by the fourteenth section is of a special and extremely limited character. The stockholder is made directly liable for work and labor done, and for materials furnished to carry on the operations of the corporations. But two kinds of indebtedness only are imposed upon the stockholders, indebtedness for labor and indebtedness for materials furished. No other form or species of debt of the corporation can be collected from the stockholder under this section. Moreover, the liability created by this section is a direct liability from the stockholder to the creditor, and it exists to the amount of the stock held by the stockholder, without any reference to the question whether it has been paid for or not. Hence the stockholder, although he

has paid in full to the corporation for his stock, is nevertheless still liable to the extent of the whole value of his stock to the two classes of creditors named.

This liability is, of course, of a purely statutory character, having no existence outside of the legislation, and whenever it is invoked it must be enforced in the very manner prescribed by the other portions of the Act. If that kind of remedy is not literally pursued when that particular liability is proposed to be enforced, there can be no recovery. Such were the decisions of this court in many cases, notably in Patterson v. Lane 11 Cas., 275; Hoard v. Wilcox, 11 Wr., 51; Brinham v. The Wellersburg Coal Co., Id., 43; Youghiogheny Shaft Co v. Evans 22 P. F. S., 331; Means' Appeal, 4 Norr., 75. These were decisions under other Acts, principally the manufacturing law of 1849, but the controlling idea of the whole of them was that the liability and the remedy were special and statutory and therefore the provisions of the statute must be strictly pursued. Nothing more than this was decided in any of them. Thus in Patterson v. Lane, which was under the act of 1849, the 9th section of the Act provided that the stockholders should be individually liable for all the debts and contracts of the corporation, to the amount remaining unpaid on their shares respectively, until the whole amount of the capital stock was paid in and a certificate by the officers to that effect was made and recorded. It was alleged that a false certificate had been made as to the amount of stock paid in, and that the whole had not been paid, and a bill in equity was filed against certain stockholders to enforce their individual liability. But we held that such a bill would not lie because by the 23d section a special mode of proceeding for that purpose was provided and it must be strictly pursued. This was the whole of that decision. Precisely the same doctrine was held and applied in Hoard v. Wilcox, though the source of individual liability was different, and the defect in the proceeding was different, to-wit the corporation was not joined as required by the statute. THOMPSON J. said on p. 58: "It is very evident that the remedy of the statute was not followed in these proceedings, and it is also quite apparent on the face of the lease, that it is under the statute that they seek to make the defendants answerable." He said also " The remedy for the collection of demands against such institutions is therefore statutory and special and must be followed. This we have lately held in Brinham et al v. The Wellersburg Coal Co. et al., ante p. 43, in obedience to the rule of the Act of 1806 requiring the remedy prescribed by a statute to be pursued." The other cases referred to above were mere repetitions of the same doctrine applied to the facts involved in them.

In no one of these or any other cases cited in the paper book of the appellants, did any question arise as to the right of a creditor to enforce the equitable obligation of every stockholder in a moneyed corporation to pay the whole amount, if necessary, of his unpaid capital stock, in discharge of *all* the indebtedness of the corporation. That is a species' of obligation which is founded in no statute, but exists by force of the consideration that the capital stock of a corporation is a trust fund for the payment of its debts, and upon the happening of the insolvency of the corporation, and the exhaustion of its assets, its unpaid capital stock may be appropriated for the benefit, not of any one creditor, but of the whole body of creditors. In none of the manufacturing laws of this Commonwealth is there any substitution of any form of equivalent liability for this. On the contrary the special, limited and restrained forms of liability established by these Acts, are in the nature of penal obligations for derelictions of duty, or additional personal monetary duties imposed upon stockholders in favor of laborers, mechanics and material men, out of consideration for the meritorious character of the claims. They are an added means of satisfaction to these two classes of creditors under the Act of 1874, but substitutionary for nothing. They may be resorted to or they may not. If they are it must be in the precise methods, and within the special limits imposed by the legislation which authorizes them. But if they are not, upon what principle of law or morals shall it be said that these two meritorious classes of creditors shall be literally ousted of other rights and remedies available to all creditors, simply because of the relation of creditor to the common debtor.

It is true that in the bill in this case the complainants, other than Maxwell, allege that the debts due them are for work and labor done, and materials furnished; and as to Maxwell, proof was offered, and refused, to show that the consideration of his judgment was for materials furnished. But of what consequence is this? The learned counsel for the appellants argue with much ingenuity and earnestness, that because a statutory and peculiar remedy is given to creditors of this character, that one remedy alone must be pursued, and if it is not, all their other remedies against the same parties are taken from them. In other words, laborers and material men can make the stockholders pay them, because they are stockholders, and by the statute are bound to pay such claims in addition to paying for the whole of their stock, and because they have this right it is their sole, only right of redress against such persons. It is conceded that all other creditors can require the stockholders to pay in their unpaid capital stock in satis-

faction of their claims, but it is contended that laborers and material men cannot do so, because they have a right peculiar to themselves to resort to an additional remedy which enables them to call upon the stockholders, although they may have paid up the whole price of their stock. The answer to this is very simple. The laborers and material men are creditors of the corporation in as large and broad a sense as all other creditors, and of course in that capacity they have all the remedies which are common to the whole mass. In addition to that they have a special remedy which the others do not possess. This might be availed of if the other failed, but, in no possible view of the case can we hold that its existence deprives them of other remedies common to all creditors alike.

The doctrine that the capital stock of a moneyed corporation is a trust fund available to creditors in the event of insolvency is admitted by the appellants, and is established by very numerous decisions. A few of them are the following: Sawyer *v.* Hoag, 17 Wall., 610; Sanger *v.* Upton, 1 Otto, 56; Hatch *v.* Dana, 11 Id., 205; Wood *v.* Dummer, 3 Mas., 308; Webster *v.* Upton, 1 Otto, 65; Wilbur *v.* The Stockholders, 35 Leg. Int., 346; Story's Equity, § 1252; Vose *v.* Grant, 15 Mass., 505; Spear *v.* Grant, 16 Mass., 9; Stang's Appeal, 10 W. N. C., 409; Messersmith *v.* Bank, 15 Norr., 440. In Upton *v.* Tribilcock, 1 Otto, on p. 47, the doctrine is thus fully and forcibly expressed: "The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund of which the directors are the trustees. It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. This duty is a sacred one and cannot be disregarded." In Sanger *v.* Upton, 1 Otto, 60, it is said: "The capital stock of an incorporated company is a fund set apart for the payment of its debts. . . . . . The creditors have a lien on it in equity. It is publicly pledged to those who deal with the corporation for their security. Unpaid stock is as much a part of this pledge, and as much a part of the assets of the company as the cash which has been paid in upon it."

It is also entirely clear that the creditors of an insolvent corporation may compel, by bill in equity, the payment of the unpaid capital stock in discharge of their debts. Thus in Myers, Assignee, *v.* Seeley, 10 Nat. Bankruptcy Reg. Rep., 412, it was said: "Bills by creditors who have judgments against the corporation have been sustained against the corporation and its stockholders, said bills being framed in the name of the judgment creditors, and of all others who may choose to come in and be made parties thereto. In such cases the decree has been for an account to be taken of the debts

and assets of the corporation, for the appointment of a receiver to whom the stockholders and officers are ordered to pay and account respectively for so much of the assets and capital stock as are necessary to pay the debts due to the creditors; the assets thus collected and received to be applied by the receiver in discharge of the debts." There are other numerous authorities to the same effect, but it is unnecessary to repeat them, as the right to such a remedy is not at all disputed by the appellants, if any right of recovery exists.

A special defence was made as to W. M. Bunn, one of the appellants, that he was an assignee of stock in the corporation defendant, and not an original subscriber. It was admitted however that by the seventh section of the Act of 1874 an assignee of stock is subject to the same liabilities as an original subscriber. But it is argued that as the fifteenth section provides a special remedy for any liability under the provisions of the Act, the liability of an assignee can only be enforced by pursuing that remedy. The argument is not sound however, because the seventh section simply places assignees in the same position as original subscribers. It does not create any special liability. When it subjects assignees to all the liabilities of subscribers, and gives them all their privileges and immunities, it simply confers a status. To determine what are the liabilities of assignees since this Act, we have simply to inquire what are the liabilities of subscribers. When we determine the latter we thereby determine the former. We have already shown that among the liabilities of the subscribers is the obligation to pay the unpaid portion of the capital stock. This liability exists outside of the Act of 1874 and of all legislation, and of course attaches to assignees because their position is the same as that of subscribers. The fifteenth section relates only to the special personal liabilities to pay particular debts created by the other sections of the Act. Mr. Bunn is therefore liable specially for debts due to laborers and material men, under the Act, and he is liable as a subscriber for the unpaid capital stock.

The second defence alleged relates to the plaintiff, John Maxwell, who was the holder of about seven-eighths of all the indebtedness of the corporation. Mr. Maxwell had obtained a judgment for his debt, and it was argued he had a complete and adequate remedy at law by process of attachment in execution.

This writ is simply a species of execution, the purpose of which is to obtain satisfaction of the judgment upon which it is founded. It is not an original proceeding instituted to enforce a real or supposed legal or equitable liability by the procurement of a judicial decree as its result. In other words

it is not a remedial process, and can scarcely be spoken of as a remedy in the sense in which that term is used in considering the subject of an adequate legal remedy which excludes a bill in equity.   But leaving that thought aside we can not concede the correctness of the appellant's contention in this regard.
In considering this subject it is necessary to observe some distinctions which must be borne in mind.   There is no doubt that a contract of subscription to the stock of a moneyed corporation imposes upon the subscriber an obligation to pay to the corporation the amount of the subscription, according to the terms of the contract.   If he fails to pay, the corpora-  tion may sue him at law upon his contract and recover whatever may be due.   But recovery in this mode must be in accordance with the terms of the contract.   If by those terms payment was to be made in any particular manner, or only of a certain portion of the par value, with an agreement that no more was to be paid, such contract is valid and binding upon the corporation.   But if the corporation becomes insolvent and all its other assets are exhausted, and it is requisite for the payment of its debts that its unpaid capital should be paid up, then the law changes, and it is perfectly well settled by many decided cases, that all stipulations, conditions and devices agreed upon between the stockholders and the corporation, releasing the former from their obligation to pay in cash the full par value of their stock, become nugatory and void.   Notwithstanding such terms of subscription the stockholders, in such circumstances, can be compelled to pay in full for their stock.   This doctrine results from the character of the capital stock of corporations.   It is a trust fund.   It exists for the benefit of the creditors whenever their rights and interests require it.   Its payment can be enforced in modes which are not available to the corporation and without using its name.   Thus, creditors' bills in the names of individual creditors, whether by judgment or otherwise, proceedings by assignees in bankruptcy either directly by bill or by petition to the court in bankruptcy, and proceedings by insolvent assignees or receivers under direction of the proper courts, are the ordinary modes in which the rights of the creditors are enforced in the circumstances we are now considering.   In all of them however, it is absolutely essential that in some mode there should be an ascertainment in some form of the fact of insolvency, of the exhaustion of all other assets, of the amount of the debts due by the corporation, of the amount of capital stock required for the discharge of the debts, and a call or assessment upon the stockholders for the payment of the amount necessary to be paid by each.   If the contract of subscription is absolute and without conditions or terms relieving

the stockholders from the payment of the full par value of the stock, the call or assessment may be made by the directors of the corporation, and if the corporation is *sui juris* and has not passed into the hands of assignees or receivers, the proceeding to recover the money may be prosecuted by the corporation in its own name.   If, however, the corporation refuses to act, or is disabled, either by the terms of its contract or by its legal incapacity by reason of insolvency or bankruptcy, the assessment must be made by some court having jurisdiction of the matter and the parties, in some suitable proceeding by way of bill or petition.   Upon such proceeding and the establishment of the requisite facts above stated, the court will either order an assessment to be made upon each stockholder of the amount to be paid by him, and upon such assessment an action can be founded and tried in the common law courts, or a decree can be made directly against each stockholder who has been made a party and served with process, for the payment of the money due by him, and such decree can be enforced by immediate execution process.

These principles are announced and illustrated in many cases.   Wood *v.* Dummer, 3 Mason, 308, 314; Sagory *v.* Dubois, 3 Sandf. Ch. Rep., 467; Ward *v.* Griswoldville Manuf. Co., 16 Cónn., 593; Ogilvie *v.* Knox Ins. Co., 22 How., 380; Mann *v.* Pentz, 3 Comst., 415, 423; Adler *v.* The Milwaukee Patent Brick Manufacturing Co., 13 Wisc., 63; Myers *v.* Seeley, 10 Nat. Bank. Reg. Rep., 411; Upton *v.* Tribilcock, 1 Otto, 45, 47; Sanger *v.* Upton, Id., 56, 60; Webster *v.* Upton, Id., 65; Wilbur *v.* Stockholders, 39 Leg. Int., 346; Scovill *v.* Thayer, 15 Otto, 143; Patterson *v.* Lynde, 16 Id., 519; Sawyer *v.* Hoag, 17 Wall., 610.

The question whether an attachment in execution will lie at the suit of a single creditor to secure payment of his own debt to the exclusion of all other creditors is one whose solution depends upon the application of some of the principles above stated.   If the corporation is solvent, and the subscription is in the ordinary form of an absolute engagement to pay the price of the stock, there is no doubt that an attachment in execution is an effective remedy for a judgment creditor of the corporation.   The reason is that in such circumstances the amount due by the subscriber to the stock is an ordinary debt due directly by the stockholder to the corporation, the payment of which may be enforced in an action on the contract of subscription.   Being a debt due, there is a right of action for its recovery by the company, and therefore it is strictly and properly subject to seizure by attachment. Hence it was held in Peterson *v.* Sinclair, 2 Norr., 250, that a balance due on a subscription to stock of a corporation is

attachable as other debts are. No question of the solvency or insolvency of the corporation was raised or considered in that case.

In Hays *v.* Lycoming Fire Ins. Co., 2 Out., 184, an attachment was sustained against money due upon an assessment on the premium notes of the company for the purpose of paying losses, but it was expressly said by our brother GORDON in the opinion that it was admitted the company was solvent, and the case was not complicated by the question of insolvency. It was held that as the company was solvent and the premium notes were assessable for the payment of the very debt in suit, and the assessment was lawfully made and the money partially paid into the hands of one of the garnishees, it was to be treated as any ordinary debt and subject to attachment as other debts. In another case between the same parties, reported in 3 Out., 621, the facts were that a member had sustained a loss by fire, for which he had brought an action and obtained judgment before the insolvency of the company. An attachment in execution was issued, also before insolvency, and served upon a member who had given a premium note for his insurance. He became indebted upon his note, before insolvency, for the proportionate part necessary to pay the plaintiff's loss, and nothing remained to be done except to ascertain the amount of that proportion. Upon these distinct grounds the attachment was sustained. Mr. Justice TRUNKEY in delivering the opinion said, on p. 625 : " The garnishee gave his notes to the defendant, to be paid in such portions and at such times as the directors may, agreeably to the Act of incorporation, require. The losses by fire occurred, and this judgment for one of said losses was obtained prior to the proceedings for dissolution of the company. Before its dissolution the garnishee became indebted on his premium notes for the proportionate sum necessary for payment of said losses, and nothing remained to be done except to ascertain the proper amount of his indebtedness prior to his liability to an action to enforce payment. The writ of attachment was issued and served before the dissolution of the company, and the debt owing to the defendant by the garnishee became bound by it. After the receiver was appointed by order of the Court, he ascertained the measure or amount of the debt which had been levied upon by the attachment of the plaintiff."

The foregoing are the only cases of attachment in execution in the Pennsylvania Courts to which we are referred, and with the exception of the case In re Glen Iron Works, bankrupt, 13 W. N. C., 387, to be hereafter considered, are all we have found in the books of reports relating to this subject.

But there are many cases which, as it seems to us, settle the principles which ought to control the decision of the question.

In order to sustain an attachment in execution there must be a debt due from the garnishee to the defendant in the judgment, which may be payable at the time of the service of the writ, or may become payable subsequently. This debt must be at least a cause of action. If it be not, so that it cannot be enforced by the defendant against the garnishee, it certainly cannot be converted into a cause of action by the mere consideration that an attachment has issued instead of a summons in a common law action. If there is an inherent defect in the cause of action itself which prevents any recovery by the defendant or his representative because of the nature of the defect, it is not possible that such defect can be regarded as removed simply because another proceeding is adopted.

Now it is manifest, upon the plainest principles, that in the case of an insolvent corporation, all of whose assets are exhausted except its unpaid capital stock, there can be no recovery against a delinquent stockholder until a call or assessment has been made upon him fixing the amount he is required to pay. Prior to insolvency this might be done by the corporation if it is not disabled by the special terms of the subscription contract. But when insolvency and exhaustion of assets exist, the unpaid capital is not available to any one creditor in satisfaction of his debt, because then the whole amount of the unpaid capital is a trust fund which does not belong to the corporation, but to the whole body of its creditors. Hence, whether the proceeding originates in the name of one, or of several, or of all the creditors, the result is the same in each. The capital, when recovered, enures to the benefit of all, and must be distributed among all ratably. Before any recovery can be had in such proceedings, no matter of what particular form, there must be an assessment made by a competent authority. The necessity for an assessment arises from the consideration that only so much of the unpaid capital can be called in as is required for the payment of the unsatisfied debts. If the whole unpaid capital is not required the whole cannot be called. In order to ascertain how much is required there must be an account of debts, assets, and unpaid capital taken, and then a decree for an assessment of the amount due by each stockholder. Thus in Mann v. Pentz, 3 Comst., on p. 423, the Court said: "This liability (for unpaid capital) is only incurred when the capital paid in is not sufficient to satisfy the debts against the corporation, and then only to an amount sufficient to satisfy such debts. It is therefore necessary that an account of the assets and of the debts should be taken, of the amount of capital remaining unpaid

9 OUTERBRIDGE.—5.

upon the shares, and the amount unpaid by each stockholder, in order that they may be made equally liable."

In Myers *v.* Seeley, 10 Nat. Bank. Reg. Rep., 411, the court after stating the rule, says: " The reason of that rule is, that the unpaid subscriptions are assets applicable to the payment of corporate debts which the corporate authorities may call in for corporate purposes. If there are adequate assets other than said calls, then the creditor has no legal or equitable right to insist upon such calls. Primarily the amount due on subscriptions is a debt due to the corporation which it alone can enforce, and unless the corporation is without other assets to meet its obligations, and fails to make the needed calls, creditors cannot interpose. When the facts justify their interposition, an account of assets and debts should be taken, in order that it may be known what, if any, calls should be made. No further call should be made than what is sufficient, together with the other assets, to meet all debts; for the bill by creditors cannot reach beyond the satisfaction of their demands. They have no other equity."

In Wilbur *v.* The Stockholders, 39 Leg. Int., 346, CADWALA-DER, J. said: " Where the corporation is solvent, the unpaid capital is not due and payable by the stockholders until payment in part or in whole is called for by the corporate authorities, unless a postponement of the payment would be inconsistent with some provision of the Act of incorporation, or with a conventional engagement with the stockholders. Ordinarily there is no such inconsistency of either kind, and thus in the case of a solvent corporation, a call or levy by the corporate authorities assessing the amount or amounts payable must ordinarily precede any ascertained obligation of the respective stockholders to pay. But in the contrary case of an *insolvent* corporation the recourse of its creditors does not depend upon such condition precedent, and cannot be thus postponed. Every stockholder is, with relation to creditors, under an obligation to pay so much of the amount represented by his share or shares, of the capital as may be required for the payment of the corporate debt. ··· Upon the insolvency of the corporation the obligations of the stockholders thus at once become assets for the payment of its debts to such an extent as other assets are deficient. To this extent the obligation of every stockholder, in its just proportion, then becomes in equity a debt payable for the benefit of the creditors. No act of the corporation before or after its insolvency can derogate in this respect from the rights of creditors." In Webster *v.* Upton, 1 Otto, 71, STRONG, J. says: " All the cases agree that creditors of a corporation may compel payment of the stock subscribed, so far as it is necessary for the satisfaction of the

debts due by the company. This results from the fact that the whole subscribed capital is a trust fund for the payment of creditors when the company becomes insolvent."

The foregoing principles which are expressed in many cases indicate the fundamental conditions which underlie the whole subject of the liability of the stockholders as to their unpaid capital stock. Such stock in cases of insolvency is due as an entirety: it is due to the aggregate of the creditors; only so much is due as is requisite to discharge the indebtedness of the corporation after all other assets have been thereto applied; as a necessary consequent there must be an account of debts, assets and unpaid capital taken; when such account has been taken, and the amount required from each stockholder has been ascertained, an assessment ordering the payment of such proportionate amount by each may be made by a court of competent jurisdiction in a proceeding in which the corporation and the stockholders should be made defendants.

I consider it as the clear result of the decisions that, except in cases where the corporate authorities have themselves made calls which are authorized by the subscription contracts, there is absolutely no liability of any kind whatever on the part of the stockholder to pay any part of his unpaid capital, except under and by force of an assessment made as above stated. If this be true there is nothing upon which an attachment can fasten at any time prior to the assessment. I apprehend this conclusion is sustained by specific authority which I now proceed to indicate.

The case of Chandler, Receiver, v. Siddle, a stockholder, 10 Nat. Bank. Reg. Rep., 236, was an action at law by a receiver of an insolvent insurance company against a single stockholder, to collect eighty per cent., unpaid, of the defendant's subscription to the capital stock of the company. The subscription contract provided for the payment in instalments, of twenty per cent. of the stock, and that the balance should be subject to the call of the directors as they may be instructed by majority of the stockholders represented at any regular meeting. There was no call by the directors, and the Receiver brought an action at law on the contract to recover the eighty per cent. against one stockholder defendant. The Circuit Court of the United States for the Southern District of Illinois, MILLER, J., in disposing of the case, said on p. 238: "In this action at law, in which neither the corporation nor its stockholders other than the defendant are before the court, and in which the suit is on the contract of subscription for the entire eighty per cent. alleged to be due, I am of opinion, considering the terms of that contract, and that no call or assessment is alleged, either by the company before the insolvency,

or by the court since, that the petition does not state *a cause of action.* In other words, in this action at law on the contract there must be a call or assessment, or something standing in the place thereof and equivalent thereto, either by the company, or by a proper court in order to make the defendant liable."

If there was not a cause of action, nothing to make the defendant liable without an assessment, surely there could be nothing to serve as the foundation of an attachment. For the writ of attachment cannot *create* a liability. It can at best appropriate a liability already existing. But if it already existed it could be enforced in the proceeding on the contract. The attachment is also on the contract alone where there has been no assessment, and must fall with the action at law built upon the same foundation.

The case of Adler et al. *v.* The Milwaukee Patent Brick Manufacturing Co. et al., 13 Wis., 63, was a proceeding by one creditor suing for himself and all other creditors, &c., against the corporation and a number of stockholders to compel the payment of unpaid capital stock in discharge of debts. The general principles we have heretofore stated were announced, and on p. 70, DIXON, C. J., speaking of the question whether one creditor might acquire a preference over others, said: " Whether in those cases where the stockholders are not individually liable by law for the debts of the corporation, one creditor can, by superior diligence, acquire a preference over the other creditors beyond that which might result from his judgment becoming a lien on specific property, or his having otherwise obtained a higher security at law, does not distinctly appear. But the conclusion from the cases and the general doctrines of courts of equity is, I think, that he cannot, and that when he is obliged to seek the aid of those courts for the enforcement of his demand, he must do so for the benefit of all other creditors who may desire to unite with him, and that all must share alike in proportion to the amount of their respective claims, in the funds which may be realized by the proceeding. The maxim of the law in like cases is, that equality is equity, and certainly no case more appropriate for its application could be imagined. I conclude, therefore, and the authorities clearly tend to show, that such is the practice. . . .

In the case of Wilbur, assignee, *v.* Wilson et al., in the Circuit Court of the United States for the Eastern District of Pennsylvania, 21 Oct. Sess., 1875, not reported, common law actions were brought against the stockholders by the assignee in bankruptcy, upon promissory notes given by each stockholder for the payment at a definite time of the full amount of

each subscription. There was a condition annexed that only fifty per cent. of the amount of each note was subject to assessment, and that the remainder should be paid only in dividends of profits earned. Affidavits of claim were filed by the plaintiff setting out the notes and conditions in full, but alleging that the conditions were void because the corporation had become insolvent and bankrupt; that its assets were all exhausted; that eighty per cent. of the capital had never been paid, and that the whole of it was required for the payment of the debts. Defence was taken by affidavits which admitted the foregoing facts, but alleged that no assessment had ever been made upon the notes except one of thirty per cent. which was shortly after rescinded, and therefore there was no liability to pay any part of the eighty per cent. The justices of the Circuit Court, McKENNAN and CADWALADER, adopted this view and refused judgment for the plaintiff upon the exclusive ground that, no assessment having been made, there was no liability of the stockholders to pay any sum whatever, and hence there was no cause of action. The writer was of counsel for the assignee in that case, and has personal knowledge that the decision was made upon the one ground stated, and no other. No written opinion was filed. A petition for an assessment was then presented in the District Court, and the assessment was subsequently made. Although the plaintiff in the actions at law was the assignee who represented all the creditors, and who sought recovery for all, and all the stockholders were sued, and although the condition annexed to the notes was void against creditors, as was subsequently held, still it was decided that the absence of an assessment was fatal to the cause of action. We are very clear that if there was no liability at all sufficient to support an action, there was none upon which to found an attachment.

The case of Scovill v. Thayer, 15 Otto, 143, puts the whole subject at rest. There a corporation was adjudicated a bankrupt. The assignees presented a petition for an assessment upon the unpaid capital stock for payment of debts. The subscribers to the stock had made an agreement with the company that no more than twenty per cent. of the par of the stock should be paid. The petition of the assignees asked for an assessment of seventy-six per cent. for payment of debts. The defendant, Thayer, having failed to pay his assessment, the assignees brought an action at law against him upon the assessment, and to the declaration filed the defendant filed two pleas, the first of which was a general denial of the allegations in the narr., and the second set up the limitation of two years prescribed by section 2 of the Act of March 2, 1867, c. 176, the general bankrupt law of the United States. The

court below sustained the plea of the statute of limitations, and gave judgment for the defendant. The assignees took a writ of error from the Supreme Court, and the whole case was there considered and the judgment of the lower court reversed. The question was, when did the cause of action arise? If it arose upon the subscription contract, the bar of the statute applied, but if it did not arise until the assessment was made, then it did not apply, and the assignees were entitled to recover. On p. 153 the court say : "The precise question with which we have to deal is, When would this action at law, brought by the assignees of the bankrupt company against a stockholder, to recover a part of the balance due on his stock, be barred by the statute? This will depend on the answer to the question, When did the cause of action accrue to the assignees? In other words, when could they have commenced this action against this defendant to recover the amount due on his stock? . . . . . The stock held by the defendant was evidenced by certificates of full-paid shares. It is conceded to have been the contract between him and the company that he should never be called upon to pay any further assessments upon it. The same contract was made with all the other shareholders, and the fact was known to all. As between them and the company this was a perfectly valid agreement. It was not forbidden by the charter or by any law or public policy, and as between the company and the stockholders was just as binding as if it had been expressly authorized by the charter. . . . . . No suit could have been maintained by the company to collect the unpaid stock for such a purpose. The shares were issued as full paid, on a fair understanding, and that bound the company.

· "In fact it has been held in recent English cases that not only is the company, but its creditors also are bound by such a contract. . . . . . But the doctrine of this court is that such a contract, though binding on the company, is a fraud in law on its creditors which they can set aside; that when their rights intervene and their claims are to be satisfied, the stockholders can be required to pay their stock in full. . . . . The reason is that the stock subscribed is considered in equity as a trust fund for the payment of creditors. . . . . . The question for solution is, therefore, when, under the facts of this case, did the cause of action accrue against the defendant in error? Certainly not until it became his duty to pay according to the terms of his contract or according to law.

"It is well settled that when the stock is subscribed to be paid upon call of the company, and the company refuses or neglects to make the call, a court of equity may itself make the call if the interests of the creditors require it. The court

will do what it is the duty of the company to do. . . . . . But under such circumstances, before there is any obligation upon the stockholder to pay, without an assessment and call by the company, there must be some order of a court of competent jurisdiction, or, at the very least, some authorized demand upon him for payment. And it is clear the statute of limitations does not begin to run in his favor until such order or demand. . . . . . In this case there was no obligation resting on the stockholder to pay at all until some authorized demand in behalf of creditors was made for payment. The defendant owed the creditors nothing, and he owed the company nothing save such unpaid portion of his stock as might be necessary to satisfy the claims of the creditors. Upon the bankruptcy of the company his obligation was to pay to the assignees, upon demand, such an amount upon his unpaid stock as would be sufficient, with the other assets of the company, to pay its debts. He was under no obligation to pay any *more*, and he was under no obligation to pay anything until the amount necessary for him to pay was at least approximately ascertained. Until then his obligation to pay did not become complete. But not only was it necessary that the amount required to satisfy creditors should be ascertained, but that the agreement between the company and the stockholders to the effect that the latter should not be required to make any *further* payments on his stock, should be set aside as in fraud of creditors. No action at law would lie to recover the unpaid balance due on the stock until this was done. The proceeding for an assessment in the bankruptcy court was, in effect, a proceeding to accomplish two purposes; first, to set aside the contract between the company and the stockholder; and second, to fix the amount which he should be required to pay. Until these things were done, the cause of action against the stockholder did not accrue, although his primary obligation was assumed at the time when he subscribed the stock."

In Patterson *v.* Lynde, 16 Otto, 519, a judgment creditor of the corporation brought an action against one stockholder to enforce the payment of his unpaid capital stock in satisfaction of his judgment. It was held this could not be done. WAITE, C. J., says on p. 520: " Since this case was decided below, the Supreme Court of Oregon has passed on the same question, and in Ladd *v.* Cartwright, 7 Oreg., 329, determined that the individual liability of stockholders for the indebtedness of the corporation is limited to the amount of their stock subscribed and unpaid, and that the remedy of the creditor to enforce this liability is in equity where the rights of the corporation, the stockholder and all the creditors can be adjusted in one suit. Of the correctness of this decision we have no doubt.

. . . No one creditor can assume that he alone is entitled to what any stockholder owes, and sue at law so as to appropriate it exclusively to himself."

Against all these doctrines and express decisions we are referred by the learned counsel for the appellant to one case in which a contrary decision was made. It is the case In re Glen Iron Works Bankrupt, 13 W. N. C., 387. A careful examination of that case compels us to say that we cannot agree with the learned Judge of the District Court who decided it. The case of Scovil *v.* Thayer does not appear to have been called to his attention. Had it been, it seems to us his conclusion must have been different. The reasoning of that case is in clear hostility with any theory of the least degree of obligation on the part of the stockholders in the state of facts which existed in the case of the Glen Iron Works, until after the agreement of the stockholders had been declared void, and an assessment had been made. When the attachment in the latter case was issued and served, there was no obligation or duty to pay anything on the part of the stockholders, except the subscription contract itself. On that contract there was no right of action whatever in favor of the company and against the stockholder. There was no cause of action. Not a penny could have been recovered if the company had, at the date of the attachment, brought an action on the contract. Even the assignee, as was held in his actions, had no cause of action whatever after his appointment, and after his much larger right of action on behalf of creditors had accrued. Two things were required to be done first, before the slightest cause of action arose. One was an assessment, and the other, a decree setting aside the fraudulent condition of the subscription contract. Neither of these had been done. The learned Judge thought the attachment might be used as equity process, to take all the steps, and enforce all the rights. We cannot think so. The machinery of an attachment would not admit of it, and if it did, the result would be, not an application of the proceeds to the payment of the attaching creditor alone, but an equitable distribution to all. An attachment in execution is a strictly statutory remedy for the sole benefit of the attaching creditor. We cannot regard it as equity process in any point of view. It has no machinery by which other creditors can be introduced as plaintiffs or other stockholders as defendants. Nor do we understand how it would be possible under a mere system of interrogatories to, and answers by, the garnishees named in the proceeding, and of jury trial, on the truth of the answers, to marshal the entire assets of the corporation, to take an account of all its debts and all its assets, to ascertain the amount of unpaid capital

stock due from all the stockholders, whether garnishees or not, to determine the proportionate amount due by each for the payment of so much of the indebtedness as cannot be discharged by other assets, or to make a final decree for an assessment upon delinquent stockholders, designating the amount payable by each. Only a portion of the stockholders were attached as garnishees in the Glen Iron Co. case. The remainder could not be brought in because the attachment law makes no provision for it, and if they could, the plaintiff's lien would date only from the time they were brought in, thus making a conflict in the mode of distribution. As all other creditors except the plaintiff would or might get no benefit from the attachment, they certainly could not be forced to intervene, and if they wished to come in they could not do so. The attachment law makes no provision for such a purpose, and surely their rights could not be administered without their participation in the proceedings. Upon any consideration of the subject we are persuaded that the writ of attachment in execution is a proceeding of strict law not to be found anywhere in the system of equity law or practice, nor in the common law, existing only by force of special statutes, intended and devised for the sole advantage of the creditor who issues it, excluding all others from its benefits, and entirely unprovided with any methods for the introduction of strangers, and the administration of their rights. Moreover, it is a perfectly familiar rule in the attachment law that the attaching creditor stands in the shoes of the defendant in the judgment, and can assert no other or higher rights than his against the garnishees. Fessler v. Ellis, 4 Wright, 248; Dougherty v. Hunter, 4 P. F. S., 380.

Entertaining these views we are unable to regard the decision in the case In Re Glen Iron Works as authority in Pennsylvania for the doctrine it announces, and we cannot but regard it as in plain hostility with the decisions of the Supreme Court of the United States, and other cases to which we have referred.

So far as the case at bar is concerned, it is only necessary to add that the assignment for the benefit of creditors was made in 1876, and the creditor Maxwell did not obtain his judgment until 1879. He was therefore in no position to issue an attachment until long after the insolvency of the company was ascertained, and its unpaid capital stock had become vested in the assignees for the benefit of all the creditors, to be administered as a trust fund belonging to them. Macungie Savings Bank v. Bastian, 10 W. N. C., 71. An attachment would be no more available to him then, than would be a fi. fa, levied upon goods or lands which had passed by the assignment.

[Dando *v.* Foulds.]

The bill in equity in this case was the true remedy of the plaintiffs, framed and used in the proper form, and founded upon facts which entitle them to the decree made by the court below in their favor, and therefore it receives the sanction of this court.    The assignments of error are all dismissed. ′ ′ ′

The decree of the court below is affirmed, and the appeals therefrom are dismissed at the cost of the appellants.