## McCarty *versus* The Selinsgrove and North Branch Railroad Co.

1. Where subscriptions are made to the stock of a corporation previous to, and for the purpose of procuring a charter, any conditions annexed thereto, whether written or parol, are void. But after the organization of the company a condition is binding; and ordinarily this is so, though it rest in parol only, where except for such condition the subscription would not have been made, and provided the rights of co-subscribers are not affected thereby.

2. Where previous to signing a subscription to stock in a corporation, the defendant objected to signing, for the reason that certain conditions on which the subscription was to be made, did not appear therein, and was assured by the president of the corporation, that these conditions should be considered a part of the contract, parol evidence of these conditions is admissible in a suit on the subscription, and the non-performance of them is a defence.

3. Under the General Railroad Law of 1849, before suit can be brought for a subscription, notice of the call therefor must be shown.

June 18th 1878. Before AGNEW, C. J., GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD and MERCUR, JJ., absent.

Error to the Court of Common Pleas of *Snyder county:* Of May Term 1878, No. 185.

Assumpsit by the Selinsgrove and North Branch Railroad Company against William H. McCarty and others, trading as McCarty, Keller & Co., on the following subscription to stock:

" We, the undersigned subscribers do hereby take the number of shares of capital stock of the Selinsgrove and North Branch Railroad Company, shares being $50 each, and agree and promise to pay the same at such time or times as the said company may direct, but not to be called for faster than ten per cent. per month. Selinsgrove, December 1873."

The company plaintiff was incorporated by an Act of Assembly of May 3d 1871, and some time thereafter, the company having organized, the defendants subscribed for twenty shares of stock. On the 19th of February 1874, the board of directors met and passed a resolution, " to call in ten per cent. of the capital stock on the 10th of March next." By some mistake, the secretary of the company failed to record on the minute-book at the end of said resolution the words "and monthly thereafter," as it was passed; and on the 9th of March 1876, at a meeting of the board of directors the following resolution was passed:

" On motion, the resolution passed February 19th 1874, be so altered as to read as follows, being the true meaning of the resolution: that ten per cent. of the capital stock be called in on the 10th day of March next, 1874, and monthly thereafter."

The plaintiffs made a call for ten per cent. at a certain time, and the like amount " monthly thereafter." No notice personal, by publication or otherwise, was given defendants.

At the trial the plaintiffs proposed to show that the secretary in

recording the minutes of the 19th of February 1874, in relation to the calling in of the stock subscriptions, omitted by mistake to enter the words "and monthly thereafter" in the resolution as it appears in the recorded minutes, and that subsequently at the meeting on the 9th of March 1876, the resolution as originally passed by the board was ordered to be corrected upon the minutes, and was so corrected by direction of the board. Offered for the purpose of showing the call as it was made, and that it does not appear correctly in the original record of it.

Defendants objected to any parol testimony by this or any other witness for the purpose of showing any alteration of the minutes of the company for the purpose of affecting the defendants.

BY THE COURT.—The object of the evidence is not to overthrow a written contract between the parties by parol evidence, but it is simply to show the resolution as actually passed by the board, and that the secretary made a mistake in transcribing it, and to make the minutes conform to the actual fact. Evidence admitted, to which defendants excepted, and bill sealed. First assignment of error.

Defendants offer to prove by this and other witnesses that all the subscriptions contained in the book offered in evidence by the plaintiff, of which the subscription of the defendants is one, were obtained for a special purpose; that it was to be applied to the building of the road between Selinsgrove and Burns Junction, and that none of the subscriptions were to be paid until $20,000 bona fide subscribers were obtained, and the money to be raised and the subscription was to be applied to the building of the road between the points above specified; and at the time it was then and there stated to them, the defendants, that the said subscriptions were to be of no force or effect whatever unless the sum of $20,000 of good and valid subscriptions were first had and obtained, and that the said subscriptions were obtained by William A. Meeker, the president of the company, and that at that time the subscriptions were signed by the defendants, they objected to signing the same because the above stated stipulations were not contained therein; that the said William A. Meeker, president of the said road, then and there assured the said defendants that it was an omission, and that the said subscription should be treated in all respects as if it contained the said above stated stipulations, and that it was upon these assurances that the said defendants then and there executed the same.

To be followed with proof that the sum of $20,000 good and valid subscriptions to the said railroad, for the purpose of building said part, were never secured, and that the railway between said points has never been built; and that the company is insolvent and unable to build the same; and by its insolvency has for ever placed it out of their power to build it, and that the said special subscriptions as aforesaid made by all the subscribers thereto were delivered to the company without the authority or consent of the

subscribers, and before the said sum of $20,000 of good and valid subscriptions had been obtained, and that the original subscription of the defendant under the conditions aforesaid was for ten shares, and the sum was otherwise increased to twenty shares, at the special instance and request of W. A. Meeker, president of the company, upon the express agreement at the time of such increase, and as the inducing cause in obtaining the signatures of the defendants to the same. That the whole amount of the subscriptions, to wit, twenty shares, should be counted over and paid by the plaintiff to the defendant, by furnishing the plaintiff with timber and lumber for the purpose of constructing the bridge over Middle creek, and for other purposes for which material and timber were needed on the proposed line of railroad between Selinsgrove and Burns' Junction, for which the subscriptions were obtained as aforesaid. That the defendants were engaged in the manufacturing of timber and purchased timber to be used as aforesaid, and kept the same for over a year, ready to comply with the agreement as aforesaid made, and that no demand was ever made by plaintiffs of defendants for the timber, and that the timber so purchased was afterwards sold by them at a heavy loss, and that the timber was tendered in pursuance of the aforesaid agreement."

This offer, under objection, was excluded and constituted the second assignment of error.

In the general charge the court, inter alia, said :

" If you believe the testimony of the plaintiff, that there was a call made on the 19th of February 1874, for a payment of 10 per cent. of this subscription in a month from that date, together with 10 per cent. every month thereafter, and the resolution would be the best evidence, the defendants would be bound to pay under the call 10 per cent. every month, beginning on the 20th of February 1874, and running on monthly thereafter until all was paid." Third assignment of error.

And also charged, " the mere fact that the defendants were not notified of the call would not preclude a recovery." Fourth assignment of error.

Verdict and judgment for plaintiff. The defendants took this writ, and, inter alia, assigned for error the rejection of the foregoing testimony and the instructions above given.

*Simpson* and *Linn & Dill*, for plaintiffs in error.—Notice was necessary before suit brought : Girard Bank *v.* Bank of Penn Township, 3 Wright 102 ; McCully *v.* Penna. Railroad Co., 8 Casey 25 ; P. & C. Railroad Co. *v.* Byers, Id. 22 ; Pitts. & Conn. Railroad Co. *v.* Graham, 12 Id. 77 ; Buckley *v.* Columbia Ins. Co., 2 Norris 298. The minutes of the company were evidence of the calls made, but for no other purpose : Comfort *v.* Leland, 3 Whart. 88.

[McCarty v. Selinsgrove, &c., Railroad Co.]

The court erred in rejecting the testimony that this was a special agreement or subscription for a certain purpose which was attempted to be wrested for a different purpose. It was a fraud in fact, nor is it essential to the admission of parol testimony that a fraud was originally intended. It is enough that though the parties acted in mutual good faith at the inception of the transaction, an attempt is made to wrest it to a purpose not contemplated, or use it in violation of the accompanying agreement, and a legal delinquency attaches upon an attempted abuse of the writing sufficient to subject it to the influence of parol testimony: Rearich v. Swinehart, 1 Jones 238. Parol evidence is admissible in an action on a writing to show that at the execution of the writing a stipulation had been entered into, a condition annexed, or a promise made by word of mouth, upon the faith of which the writing was executed, although such evidence may vary and materially change the terms of the contract: Greenawalt v. Kohne & Myers, 4 Norris 369.

The case of the Railroad v. Stewart, 5 Wright 54, is applicable to this case, because the offer was to show that the president and some of the directors were the parties who made the representations; and this is recognised as binding authority in Chartiers Railroad Co. v. Hodgens, 5 W. N. C. 313; Hanover Railroad Co. v. Haldeman, 1 Norris 36.

*Doty & Hower*, for defendant in error.—No notice of calls for the payment of subscription need be made in cases of this kind: Gray v. Monongahela Navigation Co., 2 W. & S. 162; Grubb v. Mahoning Navigation Co., 2 Harris 306, and Bavington v. The Pittsburgh & Steubenville Railroad Co., 10 Casey 358–364. The cases cited by the plaintiffs in error are not in point.

The written subscription could be contradicted by parol testimony: Kennedy v. The Erie & Wattsburgh Plank-road Co., 1 Casey 224; Seitzinger v. Ridgway, 4 W. & S. 472; Bertsch v. The Lehigh Coal and Navigation Co., 4 Rawle 139, and Woods v. Wallace, 10 Harris 171.

If the defendants wanted to have a condition in their subscription that they should have the right to pay it in lumber, they could have written that condition over their names when they signed it, and then the company could have known what they wanted, and would have had an opportunity to accept or reject it with such condition. This was not done, and therefore they cannot complain of the company because they accepted it as an unconditional subscription, and the court committed no error in rejecting the evidence, no matter what representations on this subject were made by the party taking the subscriptions: Chartiers Railway Co. v. Hodgens, 5 W. N. C. 313; Cass v. Pittsburgh, Virginia & Charleston Railway Co., 30 P. F. Smith 31. The subscriptions made by the defendants below are in writing and unconditional; and the com-

pany which is composed of a number of other subscribers, signed subscriptions of the same character. If these defendants were permitted to prove parol conditions to their subscriptions, they might possibly be relieved from its payment, and the others forced to pay. This would be inequitable and unjust.

Mr. Justice GORDON delivered the opinion of the court, October 7th 1878.

Where subscriptions are made to the stock of a proposed public corporation, previous to and for the purpose of procuring a charter, any conditions annexed thereto, whether written or parol, are void. But after the organization of the company, a condition is binding and obligatory, and ordinarily, this is so, though it rests in parol, if, except for such condition, the subscription would not have been made. The latter part of this proposition is subject, however, to the qualification that the rights of co-subscribers are not affected thereby : Bowser *v.* Bedford, 12 Wright 29 ; Caley *v.* The Railroad Co., 30 P. F. Smith 363 ; Graff *v.* The Railroad Co., 7 Casey 489, and Miller *v.* The Railroad Co., *ante*, 95.

Now, as at the time the defendants entered into the contract in suit, the plaintiff was a chartered and fully organized corporation, it had all the powers to make contracts, conditional or unconditional, by deed or in parol, that are possessed by natural persons. This being so, it remains to inquire whether the offer of the defendants comes within the rules which permit the introduction of oral testimony to add to or vary the terms of a written instrument. And, first, supposing the proposed oral conditions to be admissible, as between the company and the defendants, would their interposition prove to be injurious to, or in fraud of, the rights of co-subscribers? Would the effect be to relieve the defendants from payment whilst their fellows in the common adventure would be still held ? An affirmation of this proposition determines the question against the offer proposed. For it would be intolerable that one, who had joined with others in a common undertaking, should be permitted to escape from the common burthen by the interposition of a condition of which his co-obligors had no knowledge. The inequitable character of such a transaction becomes obvious when we reflect, that one in this manner would not merely relieve himself, but would thereby add to the burthen of the others.

But the offer proposes nothing of this kind; for the alleged conditions were common to all subscribers. All might have taken advantage of them, and though some may not have seen fit so to do, yet that is no fault of the defendants, and, for such reason, they cannot be deprived of a common right. The proposed proof was that all the subscriptions, contained in the book, offered by the plaintiff, were obtained for a special purpose; that they were to be applied to the building of a branch from the main road, at Burns

[McCarty v. Selinsgrove, &c., Railroad Co.]

Junction, to the town of Selinsgrove, and that these subscriptions were not to be of force until they represented an amount fully equal to $20,000. These stipulations were reasonable and proper. The subscribers desire to have the road built to Selinsgrove; for this purpose and none other they will agree to pay their money, and that there may be a reasonable certainty that this design be fulfilled, they stipulate that if the subscriptions do not amount to a figure that will insure this reasonable certainty, then the whole adventure is to be treated as abandoned. Had the company fulfilled the first condition, by building the road to Selinsgrove, the second might be disregarded, for the main design, to wit, the construction of the improvement, being accomplished, the necessity for the second would fall, and the subscriber could not allege a want of consideration for the money which he had agreed to pay. But the company did nothing of the kind; it did not build the road, hence, any one can see that it would be a most inequitable perversion of the agreement should these people be compelled to pay for that which was not embraced in their compact; that is, for the construction of the main line instead of the branch.

It is true these provisions were oral, but the offer was to prove that the defendants, and their co-subscribers refused to put their names to the contract until they were assured, by the president of the company, that they should form part of the terms of that contract and be of the same force as though written therein. This offer brought the proposition within the rule which allows of the introduction of parol evidence to add to or vary the terms of a written contract, for it is clear, that the attempt to enforce the writing, without the oral conditions, was but an attempt to enforce what was not the contract of the parties, and if successful, would be a fraud on the rights of the defendants. In order to prevent a result of this kind the offer should have been admitted.

The third and the fourth assignments, covering as they do, the same subject-matter, may be considered together.

By the contract the subscriptions were payable at such time or times as the company should direct, "but not to be called for faster than ten per cent. a month." As this corporation is made subject to the General Railroad Act of 1849, we must construe the above contract with reference to the provisions of that statute. The 8th section thereof provides that "the capital stock of such company shall be divided into shares of $50 each, and shall be called in and paid at such times and places, and in such proportions and instalments, not, however, exceeding $5 per share in any period of thirty days, as the directors shall require, of which public notice shall be given for at least two weeks next preceding the time or times appointed for that purpose." It does seem, therefore, that the statute contemplates notice, and unless the officers of this corpora-

6 Norris—22

[McCarty *v.* Selinsgrove,&c., Railroad Co.]

tion may disregard this plain precept, they cannot move until it has been complied with.

It is urged, however, that publication of notice is necessary only when the penalties for non-payment, subsequently provided for, are sought to be enforced, and this reading of the act is supposed to be sustained by the cases of Gray *v.* The Monongahela Navigation Co., 2 W. & S. 162, and Grubb *v.* The Mahoning Navigation Co., 2 Harris 306. But these cases are not in point, since the facts involved therein are not similar to those in the case now in hand. In the first there was not only notice by publication, but there was also evidence of personal notice, and the exception was only to the fact that the publication did not set out the full name of the company, an exception purely technical and amounting to nothing in a suit for the price of the stock subscribed. In the second there was no provision in the act of incorporation requiring notice of any kind previously to a suit for the subscriptions; hence, it was held that if the defendant was aggrieved for want of notice he should have pleaded the matter in abatement, but could not avail himself of it on the general issue.

On the other hand, in the case of Sinkler *v.* The Turnpike Co., 3 P. & W. 149, where the act of incorporation did provide for notice by publication, we have it said by Mr. Justice KENNEDY, that no action could be maintained for the defendant's subscription, nor any part of it, until the managers had fixed the time and had given notice as required by the act.

Authority, however, in the case under review, beyond the statute itself, is not necessary, for there is nothing therein that is in the least degree ambiguous. Notice is just as positively required as are calls and apportionment, and if the latter are necessary, so is the former. This corporation cannot go outside of its charter for its power to sue, and that power, as found within that instrument, must be exercised, if at all, under the conditions therein prescribed. We do not say that the spirit of the act would not be complied with by a personal notice, but we do think that neither the spirit nor letter of the act is complied with when there has been a total neglect of notice of any kind; nor are we disposed, by a forced construction, to abolish, or even relax, a condition which, whilst it fairly protects the subscriber, is not cumbersome to the company.

The exception, covered by the first assignment, taken to the ruling of the court on the offer of the plaintiff to prove by its secretary that the words "and monthly thereafter," were omitted by mistake, in the resolution of February 19th, ordering the call for the stock subscriptions, is not sustained. The learned judge properly said that the object of the evidence was not to impeach the writing as a contract between the parties, but only by the correction of a mistake to make the minutes conform to the fact.

The judgment is reversed, and a new *venire* is ordered.