# Humphrey *versus* The County National Bank of Clearfield.

Where a deposit of money is made in bank the Statute of Limitations does not begin to run until after demand is made; so where a note as collateral security to a line of discounts is deposited in bank, and it is converted into money by the bank, the Statute of Limitations does not begin to run as to the proceeds of the note until after demand.

3 Amerman—27

May 3d, 1886.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

. ERROR to the Court of Common Pleas of *Clearfield county :* Of July Term 1885, No. 85.

Assumpsit brought December 30th, 1876, by The County National Bank of Clearfield against Abram Humphrey, to recover the amount of two promissory notes. Pleas, non assumpsit, payment, set-off with leave.

The defendant claimed by set-off certain notes of A. C. Finney, and asked to have a balance certified in his favor. The facts of the case sufficiently appear in the opinion of the Supreme Court.

On the trial the plaintiff presented, *inter alia,* the following points:

2. Under the pleading and evidence and facts appearing in this case, the said Finney notes are, as a defence in this case, barred by the Statute of Limitations.

Answer. This point we answer in this way :   That if you come to the conclusion that this arrangement was made between Mr. Humphrey and the bank as testified to by Humphrey ; that these notes of A. C. Finney and indorsed by Samuel Mitchell were to be held as collateral security, and that these notes were discounted upon the strength of that arrangement, and you find there was a sufficient amount to pay these notes, we instruct you the notes would be paid ; but yet, so far as to allow the defendant to recover for the difference between these collaterals and the amount of the notes in suit, we say to you, under the pleadings in this case, the defendant will not be entitled to recover.   You cannot render a verdict for the defendant in this case for anything in excess of the amount of these two notes.  If, after deducting the amount of these notes in suit from the collaterals, there would be a balance over and above the amounts of these notes in suit, you cannot render a verdict for such balance, as that would be barred by the Statute of Limitations.   (First assignment of error.)

In the general charge the Court, MAYER, P. J., instructed the jury as follows :

" If, under the instructions we have given you, you are satisfied that the plaintiff is not entitled to recover, then you render a general verdict for the defendant."   (Second assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the defendant took this writ, assigning for error the answer of the Court to the plaintiff's second point and that portion of the general charge above set out.

[Humphrey v. Nat. Bank of Clearfield.]

*Orvis & Snyder*, for plaintiff in error.—1. If the collaterals had remained in the bank in specie, Humphrey would have had no right to demand and receive them from the bank until all his notes, for which the collaterals were held as security, were fully paid; until that event occurred, as he could not demand and receive the collaterals, he could maintain no action against the bank for them, and consequently the limitation of his action would not begin to run until his right of action actually existed. As he never had actually paid his notes in the bank, he could not of right demand the collaterals, or sue to recover them. The bank was a bailee of these collaterals, and had a right to retain possession of them until the purpose of the bailment was accomplished, to wit: the payment of Humphrey's notes: Kemp *v.* Westbrooke, 1 Vesey, 278; Jones on Bailments, 4th edit., p. 84, note.

2. It will be contended by the defendant in error that these collaterals did not remain in specie in the bank, but that each note when it matured was paid, and that the bank holding the money, the proceeds of these notes, could have been called upon at any time by Humphreys to pay over the excess above the amount of the notes discounted for him by the bank, and that as no demand was made within six years the claim is barred by the Statute of Limitations. We concede the premises, but deny the conclusion. As both Finney, the maker, and Mitchell, the indorser of these collateral notes, were good and responsible, we have no doubt these notes were paid at maturity, either to the bank or some of its officers. The bank undoubtedly had the right to receive the payment, but it would hold the money for the same purpose and upon the same conditions which it had previously held the note, viz.: as security for the payment of Humphrey's notes to the bank. The bank had no right to use or appropriate this money for any other purpose. The excess over the amount necessary to pay Humphrey's notes should have been credited to Humphrey's account on the books of the bank. He would have then occupied the position of a depositor, and had the right to draw this money upon his checks.

The engagement of a bank with its depositor is not to pay absolutely and immediately, but when payment shall be required at the banking house. It becomes a mere custodian, and is not in default or liable to respond in damages until demand has been made and payment refused. Such are the terms of the contract implied in the transaction of receiving money on deposit, terms necessary alike to the depositor and the banker. And it is only because such is the contract that the bank is not under the obligation of a common debtor to go after its customer and return the deposit, wherever he may be found.

Hence it follows that no right of action exists, and the Statute of Limitations does not begin to run until the demand stipulated for in the contract has been duly made. For this authorities are hardly necessary. The Union Bank *v.* The Planters' Bank, 9 Gill & Johnson, 439–461 ; and Johnson *v.* The Farmers' Bank, 1 Harrington, 117–119 ; Girard Bank *v.* Bank of Penn Township, 39 Pa. St., 98 ; McGough *et al. v.* Jamison, 107 Id., 336 ; Johnson *v.* Humphrys, Adm'r of Porter, 14 S. & R., 393 ; Finkbone's Appeal, 86 Pa. St., 368 ; Hughes *v.* First National Bank of Waynesburg, 17 W. N. C., 178.

*McEnally* (*McCurdy* and *Murray & Gordon* with him), for defendant in error.—If Humphrey's statement be regarded as true, that he left the Finney notes as collaterals for such notes as he had or should have discounted at the bank, the question arises, what was the contract between him and the bank after the Finney notes became due and were turned into money in the possession of the bank ? For we must remember that, upon the theory of Humphrey's counsel, the bank realized the money on the Finney notes when they became due ; and the last of them became due about June, 1868.

The object of collateral notes is to afford security. If they were turned into money, and so much money was received and retained by the bank as covered all the claims of the bank, the object was fully attained, and it was simply the duty of the bank to pay over the excess to Humphrey. There was no contract that such excess should be deposited and remain as a deposit until it was demanded by Humphrey. Such demand was not necessary to enable Humphrey to bring suit, or to start the running of the Statute of Limitations : Watchman *v.* Brown, 7 Casey, 161.

Mr. Justice PAXSON delivered the opinion of the court, October 4th, 1886.

This was an action of assumpsit brought to recover the amount of two promissory notes discounted by the County National Bank of Clearfield, plaintiff below, one of said notes amounting to $1,975 ; the other to $169.04. The defence set up was that the notes in suit were renewals of notes discounted by the bank as early as 1866 ; that prior to the discount of the original note the defendant left with the bank certain notes of one A. C. Finney, indorsed by Samuel Mitchell, to the amount of $4,000, the longest of which notes had thirty months to run ; that these notes were left with the bank by an arrangement made between the defendant below and James T. Leonard, president of the said bank, by which arrangement the bank was to hold these Finney notes as collateral security for

[Humphrey v. Nat. Bank of Clearfield.]

discounts which the bank was to give the defendant. Shortly afterwards the bank discounted notes of the defendant, and continued so to discount notes from time to time. The notes generally were discounted without an indorser. It was contended that the notes in suit were but renewals of this long series of discounts. It is to be observed, however, that each of the notes in suit has upon it as indorser the name of William A. Wallace, a gentleman of well known pecuniary responsibility.

It is a singular circumstance that notwithstanding the notes alleged to have been deposited as collateral were made and indorsed by responsible parties, no trace of them appears upon the books of the bank; there is no very clear proof as to their payment; nor is there any evidence that the defendant, who was evidently in a position to need the money, ever made any demand upon the bank for the proceeds, or even any inquiry about them.

There was evidence sufficient, however, of the deposit of the collaterals to carry the case to the jury. Upon the trial the defendant claimed not only that the notes in suit were paid by the collateral, but that he was entitled to a certificate for the balance due him upon the collateral, after the payment of his notes. The Court below allowed the claim so far as it was a defence to the notes, but held that the surplus was barred by the Statute of Limitations. The jury found a verdict in favor of the defendant, who sued out this writ, and has assigned for error the instructions of the Court upon the Statute of Limitations.

We are of opinion that it was error to apply the Statute. It is a settled rule of law that when a deposit is made in a bank the Statute does not begin to run until after demand is made. It is sufficient to refer to two of the later cases, viz.: Finkbone's Appeal, 86 Pa. St., 368, and McGough v. Jamison, 107 Id., 336. It is true the defendant was not technically a depositor of money to be drawn out on his check, but we are unable to see any substantial difference between such case and the one in hand. He was a customer or dealer with the bank; was having a line of discounts, and the notes in controversy were deposited as collateral to such discounts. What was the duty of the bank when the collateral notes were paid? It was to deposit or carry the proceeds to the credit of the defendant's account. He would then occupy the position of any other depositor. The theory of the defence was that the collateral notes were paid; indeed it is only upon this theory that he would have any defence to the notes in suit, or claim to a certificate. If then the notes were paid, and the bank did its

[Humphrey *v.* Nat. Bank of Clearfield.]

duty by carrying the proceeds to his credit, in what respect is his position different from that of any other depositor?

If on the other hand the bank committed a breach of duty by not applying the proceeds of the collateral notes to the defendant's account or to his credit, what is the result? The bank cannot take advantage of its own wrong. It was the pledgee of the collateral notes. The latter were pledged for the payment of the notes discounted and to be discounted by the bank. If the collateral notes have been paid, the proceeds are and must be held for the same purposes that the notes themselves had been previously held. The change in the nature of the collateral by their conversion into money can make no essential difference. It is well settled that mutual demands do not of themselves extinguish each other. The notes discounted by the bank for Humphreys have not been paid in point of fact. The bank might have applied the proceeds of the collateral notes to their payment, but it did not. It might have called upon Humphreys to redeem the pledge, but it did not. Not having exercised any such right, it holds the collateral, whether it be notes or money, as pledgee for Humphrey's notes discounted. Those notes are still unpaid. Can it be doubted that had Humphrey tendered the amount of his notes to the bank instead of waiting to be sued, he could have demanded the return of his collateral? The Statute of Limitations would have been no answer to such a demand. " If the pawnee does not choose to exercise his acknowledged right to sell, he still retains the property as a pledge, and upon tender of the debt he may, at any time, be compelled to restore it; for prescription, or the Statute of Limitations, does not run against it": Kemp *v.* Westbrooke, 1 Vesey, 278; Jones on Bailments, 84.

We are of opinion that it was error to apply the Statute in this case, and for this reason the judgment must be reversed. The verdict was in favor of the defendant, which of course defeated a recovery upon his notes discounted by the bank. He may, upon another trial, get a certificate for the balance he claims to be due on the collaterals, or he may fail in this and have to pay his notes besides. But he has a right to take this risk.

Judgment reversed and a *venire facias de novo* awarded.