## Cook *v.* Carpenter (No. 1). Lipper's Appeal.

| | |
|---|---|
| 212 | 165 |
| f212 | 181 |
| 212 | 165 |
| e213 | ³549 |
| 213 | ³551 |
| 212 | 165 |
| 35 C | 595 |
| d 36 SC | 358 |

*Equity—Jurisdiction—Corporations—Unpaid subscriptions—Remedy at law.*

A bill in equity may be maintained by the assignee of an insolvent corporation against a large number of stockholders of the corporation as parties defendant, to recover unpaid subscriptions to the capital stock, and this is the case although the bill shows that all of the unpaid capital was necessary to pay the debts, and that no accounting was therefore involved.

*Corporations—Stock subscriptions—Statute of limitations.*

On an obligation for the payment of money on demand the statute of limitations begins to run at once. Suit is a sufficient demand and must be brought within six years. Where, however, the contract is to pay on the future performance of a condition, or happening of an event, or at a certain time after demand, there a demand is necessary to a right of action and the statute does not begin to run until demand is made.

Where a subscription to stock is not presently payable in full, but by its terms is to be payable from time to time as called for by the company, the statute of limitations does not begin to run until a call is made, and it is not necessary that such call should be made within six years from the date of the stock subscription.

Argued Jan. 11, 1905. Appeal, No. 199, Jan. T., 1904, by M. W. Lipper, from decree of C. P. No. 2, Phila. Co., March T., 1899, No. 145, on bill in equity in case of Richard Y. Cook and George H. Earle, Jr., Assignees, for the benefit of creditors of the Chestnut Street Trust and Saving Fund Company v. Richard L. Carpenter and forty others including M. W. Lipper, Stockholders. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity to enforce stock subscriptions. Before SULZ-BERGER, P. J.

The answer to the bill averred that the company incorporated on June 8, 1888, started business with paid in capital of fifty per cent of its authorized capital, and that for upwards of six years thereafter the company remained in a sound financial condition, and there was no necessity for any additional capital; that there was no call or demand from July 1, 1888, until March 25, 1898, when a suit at law (subsequently discontinued)

was instituted. The answer set up as defenses : (a) no equitable jurisdiction, and (b) statute of limitations.

The court entered a decree in favor of the plaintiffs.

*Error assigned* was the decree of the court.

*Ellis Ames Ballard*, with him *Rufus E. Shapley*, and *John Weaver*, for appellants.—The bill shows on its face that there was an adequate remedy at law and in words admits it: Yeager v. Scranton Trust Co., 14 W. N. C. 296 ; Citizens & Miners' Savings Bank v. Gillespie, 115 Pa. 564.

The claim was barred by the statute : Swearingen v. Sewickley Dairy Co., 198 Pa. 68; R. R. Co. v. Byers, 32 Pa. 22; McCully v. R. R. Co., 32 Pa. 25; R. R. Co. v. Graham, 36 Pa. 77; Shackamaxon Bank v. Disston, 4 Pa. County Court Rep. 201; Finkbone's App., 86 Pa. 368; Smith v. Bell, 107 Pa. 352; Morrison's Admr. v. Mullin, 34 Pa. 12; Rhines v. Evans, 66 Pa. 192; McKelvy's App., 72 Pa. 409.

*John G. Johnson*, with him *P. F. Rothermel*, for appellees.—The present suit is not against subscribers upon their contracts of subscription, but against the holders of shares at the time of insolvency.

There is a duty upon the stockholders of an insolvent corporation, independently of the duty to pay upon calls and demands of the directors. This duty is to pay, to the extent of the unpaid capital represented by their shares, whatever may be demanded in liquidation of debts. It commences with the occurrence of the insolvency : Swearingen v. Dairy Co., 198 Pa. 68 ; Sanger v. Upton, 91 U. S. 56.

A corporation, even though not insolvent, may collect from subscribers, whose contract of subscription has been perfected by their becoming in fact stockholders to whom shares are delivered, the full amount of their unpaid subscriptions within six years of every assessment with notice.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 22, 1905 :

The preliminary question is the jurisdiction in equity. Appellants insist that there is a plain, full and adequate remedy at law, by suits against the several stockholders defendant,

where each can defend upon his own case untrammeled by differences of fact in the others. That there is a remedy at law by separate actions against the respondents is undeniable, but is it a full and adequate remedy in the sense that it bars the jurisdiction of equity?

The subject of the controversy is the collection and administration of corporate assets as a trust fund for the benefit of corporate creditors. Both the control of corporate matters and trust funds, are in general the subject of equitable jurisdiction. As was said in Lane's Appeal, 105 Pa. 49 (65) " when insolvency and exhaustion of assets (of corporations) exist the unpaid capital is not available to any one creditor in satisfaction of his debt, because then the whole amount of the unpaid capital is a trust fund which does not belong to the corporation but to the whole body of its creditors. Hence whether the proceeding originates in the name of one or of several or of all the creditors the result is the same in each. The capital when recovered enures to the benefit of all, and must be distributed among all ratably." This result, as to collection, and still more forcibly as to distribution, is not reasonably practicable except in equity.

A bill may be filed as in this case by assignees representing the corporation for the benefit of creditors, or, as in Lane's Appeal, supra, by creditors in their own names in behalf of themselves and others. In the latter case an action at law would present insuperable difficulties, and yet the substantial controversy is the same, and the mere difference in the nominal complainant should not oust in one case the jurisdiction that must be sustained in the other.

It is earnestly argued by appellants that in all the cases where a bill has been sustained, an accounting was part of the relief sought, and that equitable jurisdiction attached on this ground alone, while in the present case no accounting is asked, as the bill avers that the whole unpaid subscription will be insufficient to pay the debts. It is true that the necessity for an account is a large and influential element in equitable relief, but we do not find it said in any of the cases, that its presence or absence is the conclusive jurisdictional fact. In the present case the bill sets up facts that avoid the necessity for an accounting and an assessment. But suppose the answer had denied the

averments and thus made the necessity of an accounting and assessment an issue.  That would at once have made the case one cognizable in equity.  Citizens' Bank v. Gillespie, 115 Pa. 564, was an action at law in which such necessity was part of the issue, and the case had to be sent to a new trial for the reception of incompetent evidence on that point.  Whether all the unpaid capital is required for payment of debts, or only part, and if so how much, are matters of judgment on the evidence, and different juries are likely to differ in their conclusions.  The result would be that in numerous suits by the assignees some stockholders defendant might have to pay their subscriptions in full while some paid only part and others perhaps nothing at all.  This would be incurring certain inconvenience and quite probable injustice, where the relief should not only be certain but uniform.  As was well said by the learned judge below " there are more than forty defendants.  Most of them live within the jurisdiction, some do not, and it is quite conceivable that there might be hundreds living without the jurisdiction not reachable by our process at law.  The question involved in all the cases is substantially the same, namely, ought the corporation to collect in its unpaid capital?  It is a pure question of law, and may be decided once for all in one suit as well as in a thousand.  If the balance should not be collected from all, then it ought not to be collected from any.  If, on the other hand, it should be collected, then none should escape."

In the absence of chancery powers in our courts, equitable relief was afforded wherever practicable, in common-law forms.  When later the legislature granted equitable powers it was held that if the subject of a bill was one within the proper and established jurisdiction of chancery the invention of a new remedy in common-law form, or the extension of an old one, would not necessarily oust the equitable jurisdiction: Wesley Church v. Moore, 10 Pa. 273.  The question in such cases turns on the completeness, adequacy and convenience of the remedy at law, and our decisions have been liberal in the consideration of all these elements: Kirkpatrick v. McDonald, 11 Pa. 387; Bierbower's Appeal, 107 Pa. 14; Brush Electric Co.'s Appeal, 114 Pa. 574; Johnston v. Price, 172 Pa. 427; Gray v. Citizens' Gas Co., 206 Pa. 303.  In the last case it was said by our

Brother DEAN, " The question raised in this case is not alone whether plaintiff has a remedy at law, for that remedy it clearly has, but whether in view of the facts it is an adequate one. It may be conceded that the time is not very remote in our judicial history when a wronged party sought the intervention of equity and he could be truthfully met by the reply, you have a remedy at law in an action for damages, such reply would have been the end of his bill ; he would have been turned out of court for want of jurisdiction. But this answer is no longer conclusive as to the jurisdiction ; courts now go further and inquire whether under the facts the remedy at law is not vexatiously inconvenient, and whether it is so proximately certain as to be adequate to right the wrong complained of."

Testing by this standard the numerous actions that would be required at law, and comparing that remedy with the superior certainty, uniformity and convenience of the present bill, we have no hesitation in holding that it is a proper case for equitable jurisdiction.

The remaining question, the substantial issue in the case, concerns the statute of limitations. Stated generally it is whether, when demand is necessary to start the running of the statute, it must be made within six years of the contract. Stated in detail with reference to the particular facts of the case it is well expressed in the twelfth assignment of error, thus, " the stock subscription having been made in 1888, and all the calls made in 1888 having been paid, and no further call for the unpaid portion of the stock having been made by the directors, and the insolvency of the company having occurred more than six years from the date of the last call and the payment thereof, this action for the unpaid portion of the stock subscription, begun more than ten years thereafter, is barred by the statute of limitations."

In Swearingen v. Sewickley Dairy Co., 198 Pa. 68, the law was thus stated, " The general rules are first, that on an obligation for the payment of money on demand the statute begins to run at once. Suit is a sufficient demand and must be brought within six years : Andress's App., 99 Pa. 421 ; Milne's App., 99 Pa. 483 ; Boustead v. Cuyler, 116 Pa. 551.

" Secondly, where the contract is to pay on the future performance of a condition, or happening of an event, or at a cer-

tain time after demand, there a demand is necessary to a right of action, and the statute does not begin to run until demand is made: Smith v. Bell, 107 Pa. 352; Eichman v. Hersker, 170 Pa. 402; Taylor v. Witman, 3 Grant, 138.

" Whether there is a third rule that if demand is necessary it must be made within six years from the contract, has been both affirmed and denied in our cases, which are much at variance on the question.  It was asserted in Laforge v. Jayne, 9 Pa. 410, and expressly held in Pittsburg, etc., R. R. Co. v. Byers, 32 Pa. 22; McCully v. Pittsburg, etc., R. R. Co., 32 Pa. 25; Pittsburg, etc., R. R. Co. v. Graham, 36 Pa. 77, and Franklin Savings Bank v. Bridges, 20 W. N. C. 43.  On the other hand, it was denied generally in Taylor v. Witman, 3 Grant, 138, and expressly rejected in Girard Bank v. Bank of Penn. Twp., 39 Pa. 92; Smith v. Bell, 107 Pa. 352, and other cases."

The case then before us did not call for a decision on the last question, and it was accordingly passed with only the foregoing incidental reference.  In the present case, however, the same point is squarely presented and is now to be met.

The cases as already said are much at variance, and require critical examination.  In favor of the rule, and as contended for by appellants, are Laforge v. Jayne, 9 Pa. 410; Pittsburg, etc., R. R. Co. v. Byers, 32 Pa. 22; McCully v. Pittsburg, etc., R. R. Co., 32 Pa. 25; Pittsburg, etc., R. R. Co. v. Graham, 36 Pa. 77, and Franklin Savings Bank v. Bridges, 20 W. N. C. 43 ; and some other cases, such as McKelvy's Appeal, 72 Pa. 409, in which the foregoing have been cited though generally arguendo and obiter.

Laforge v. Jayne, 9 Pa. 410, was an action of assumpsit on a duebill for " one hundred and seventy-two dollars in Pike county checks, which I promise to return on demand."  Suit being brought after six years was supported by the plaintiff on the ground that " Pike county checks " were a specific kind of personal property and therefore demand for their return was a necessary preliminary to suit.  But this court held that the obligation was to pay money on demand and therefore the statute began to run from the date.  In the opinion COULTER, J., refers to Codman v. Rogers, 27 Mass. 112, the leading case on the view that where demand is necessary it must be made in

a reasonable time and where no cause for delay is shown such time is measured by the period of the statute. But the case was decided on the other ground, and therefore is not really in point in the present discussion.

In Franklin Savings Bank v. Bridges, 20 W. N. C. 43, the syllabus is that six years is a bar to an action by a corporation on a subscription when no call or assessment has been made in that time, but there the corporation had been insolvent for more than six years and the decision was put explicitly on that ground which is now well settled. The case therefore is not in point.

Pittsburg, etc., R. R. Co. v. Byers, 32 Pa. 22, and McCully v. Pittsburg, etc., R. R. Co., 32 Pa. 25, are the main authorities in appellant's favor. Both were actions by the corporation to recover the amount of subscriptions to the stock, and in each, the call on which the action was based was made more than six years after the subscription. This court citing Codman v. Rogers, 27 Mass. 112, held that the statute of limitations was a bar. But it is notable that the defense was not rested on the mere lapse of time, but also on the abandonment of the corporate enterprise. In the Byers case, WOOD-WARD, J., says, the act " contemplated an early commencement and completion of the road. . . . It is not reasonable to suppose the legislature meant that subscribers to such a stock should be indefinitely bound. The road was to be promptly commenced and vigorously maintained." And in the McCully case the same judge still more explicitly said we have held in the case against Byers that " the company were bound from analogy to the statute of limitations to call in payments on stock subscriptions within six years after their date; or if the delay was not satisfactorily accounted for subscribers would be at liberty after that lapse of time, to consider the enterprise abandoned and their subscriptions canceled. The presumptions of abandonment in such cases are very reasonable and necessary. . . . But this case is not left to stand on presumptions of abandonment. We have direct and conclusive evidence of it in the testimony of Addison, Kelly and Robinson. Not only was the project abandoned, but the money of many subscribers was refunded to them and they released from all further obligations to the company."

Special attention was called to this feature in Hanover Junction, etc., R. R. Co. v. Haldeman, 82 Pa. 36 (46) and some other cases which will be referred to later on.

It must be conceded, however, that notwithstanding the references to the peculiar facts the court put the cases fairly on the principle that the action for subscriptions to stock must be brought within reasonable time, and unless cause for delay be shown, such time is measured by the statute of limitations.

Morrison's Admr. v. Mullin, 34 Pa. 12, was an action by the sheriff on a refunding receipt stipulating to repay "if on settlement of the liens, it should (appear) that I am not entitled to this money." Suit was brought twenty-three years after the date of the receipt, and the point made by the plaintiff that until a settlement of the liens was shown the statute did not begin to run. But the court on the authority of R. R. Co. v. Byers, 32 Pa. 22, held that the plaintiff not having shown a settlement within a reasonable time, the statute was a bar. It is notable that two of the five justices dissented on this point, one of them being WOODWARD, J., who wrote the opinions in the Byers and McCully cases. And in Girard Bank v. Bank of Penn Township, 39 Pa. 92 (102), the suggestion is made that this case can be sustained on the presumption of payment after twenty years.

Pittsburg, etc., R. R. Co. v. Graham, 36 Pa. 77, was an action by the same railroad under substantially the same facts as R. R. Co. v. Byers, 32 Pa. 22, and McCully v. R. R. Co., 32 Pa. 25, except that the subscription was conditional "that the construction of said road is prosecuted." This element gave additional force to the defense of abandonment, and the previous cases were naturally followed.

The cases holding the other view may be said to begin with Sinkler v. Turnpike Co., 3 P. & W. 149, where it was held that on a subscription to stock payable at such times as the managers may determine, the statute of limitations does not begin to run until a call is made. The defense was that the action was brought more than six years after the subscription, though within six years from the call. The call, however, was within six years from the subscription and this fact is referred to in the Byers case (32 Pa. 22) as sustaining a distinction.

But the court in Sinkler v. Turnpike Co., 3 P. & W. 149, puts its decision plainly on the other ground. "No action," said KENNEDY, J., "could have been maintained for defendant's subscription, or any part of it until the managers had fixed a time for the payment of it. . . . The statute of limitations does not begin to run before the plaintiff has a right to bring his suit." The decision was cited as authority for this principle in McCarty v. Selinsgrove, etc., R. R. Co., 87 Pa. 332; and again in Smith v. Bell, 107 Pa. 352.

Sinkler v. Turnpike Co., 3 P. & W. 149, was decided before the Byers and McCully cases, and though antagonistic in principle, did not expressly pass upon the distinction set up in those cases. With the next case in order of time, however, Girard Bank v. Bank of Penn Township, 39 Pa. 92, the conflict really began. That was an action by the holder of a certified check, against the certifying bank, more than six years after the date of the check, the date of the certification not appearing. The court held that the holder of such check stood upon the same footing as a depositor, and as the contract of the bank with its depositor was not to pay absolutely and immediately but when payment should be required, a demand was necessary and the statute did not begin to run until it was made. The Byers and McCully cases were cited, but the court, per STRONG, J., distinguished them on the ground of their special facts, saying "the contract of subscription was a peculiar contract; the legislature had fixed five years as the limit within which the construction of the road should be commenced. It was the duty of the company to commence it and to prosecute it vigorously, and of course to make the calls without delay." He then cited Morrison v. Mullin, 34 Pa. 12, and after suggesting that in that case "the twenty years presumption stood in the way of recovery" said "in delivering the opinion of the court Mr. Justice THOMPSON referred to the rulings in Codman v. Rogers, 27 Mass. 112, and Railroad Co. v. Byers, 32 Pa. 22, but without laying down or intending to assert a general doctrine that where demand is necessary under a simple contract before bringing an action it must in all cases be made within six years from the date of the contract." This case is a clear adjudication that though the Byers case and those which follow it may be sustained on their peculiar facts,

they are not authorities for a general principle. No case has since questioned the soundness and authority of this decision. On the contrary, in Finkbone's Appeal, 86 Pa. 368, the court, after speaking of Laforge v. Jayne as countenancing a different principle (although as shown supra there is no real conflict in that decision), say, " We feel warranted in adopting the later case not only because it was the more carefully considered, but also because it accords better with the general rule that the statute cannot begin to run until the cause of action has accrued." And Finkbone's Appeal itself is cited approvingly in Humphrey v. County Nat. Bank, 113 Pa. 417, and Hartranft's Estate, 153 Pa. 530.

In Taylor v. Witman, 3 Grant, 138, the exact tenor of the note in suit does not appear in the report, but the principle that, " where an actual demand or other act of the promisee is necessary before suit, such demand must be made or that act done within six years from the date of the promise or the statute will begin to run from the date," was clearly stated and distinctly repudiated, STRONG, J., referring to Girard Bank v. Bank of Penn Township, 39 Pa. 92, as having settled the law to the contrary.

Allibone v. Hager, 46 Pa. 48, was a suit by a creditor against subscribers to the stock of a manufacturing company under the Act of April 7, 1849, P. L. 563, for unpaid subscriptions, and it was held that though no call had been made for eleven years the statute of limitations were not a defense, the court saying that the Byers, McCully and Graham cases, where the work had not been prosecuted as required by the act of incorporation, did not apply.

The next case, Smith v. Bell, 107 Pa. 352, was an action against a former policy holder in the mutual insurance company, more than six years after his policy had expired and he had ceased to be a member. His contract, however, was to pay his share of losses when an assessment should be levied by the directors. It was held that the right of action did not accrue, nor the statute begin to run until such assessment, and he was, therefore, liable, although the loss occurred more than six years before he ceased to be a member. R. R. Co. v. Byers, 32 Pa. 22, and Morrison v. Mullen, 34 Pa. 12, were referred to by the court but set aside with a cita-

tion of Girard Bank v. Bank of Penn Township, 39 Pa. 92, as governing the case.

Smith v. Bell, 107 Pa. 352, was reaffirmed and followed in the latest case on the subject, Eichman v. Hersker, 170 Pa. 402, although as our Brother DEAN called attention to in the opinion, "the assessment was not made within six years from the date of the policies and the premium note, nor within six years from the date of the losses, the payment of which had created the debt now sought to be satisfied by assessment." Distinctions based on the wording of the charters or the statutes under which they were conferred were repudiated and the decision put explicitly on the general principle that the obligation was not to pay at once but upon a future event, the levying of an assessment by the directors, and the statute did not begin to run until such assessment.

This detailed review of the cases shows clearly that while they are in some apparent conflict yet there has been a uniform trend in the later ones to rest on the correct application of a general principle admittedly sound. The rules, as stated in Swearingen v. Sewickley Dairy Co., 198 Pa. 68, already quoted, are first, that on an obligation for the payment of money on demand the statute begins to run at once. Suit is a sufficient demand and must be brought within six years. Secondly, where the contract is to pay on the future performance of a condition, or happening of an event, or at a certain time after demand, there a demand is necessary to a right of action, and the statute does not begin to run until demand is made.

The question is then suggested whether there is a third rule that if demand is necessary it must be made within six years from the contract. On this our cases were said to be much at variance, and the review of them has to some extent confirmed the statement. It will not be amiss at this point to consider on principle the foundations of rules first and second.

Negotiable instruments payable on demand were originally classed together, and held like checks and bills of exchange necessary to be presented with due diligence according to the residence of the parties: Byles on Bills, *213. "But a common promissory note payable on demand is very often originally

intended as a continuing security . . . . and is not necessarily to be presented the next day after it has been received in order to charge the indorser." But the terms payable on demand import that the debt is already due, and, therefore, the statute of limitations begins to run from the date: Byles, *347. The obligation to pay in such case is absolute and present; the only element not fixed with certainty is the time of payment, and as that is at the option of the creditor, and the debtor must be prepared eo instanti, the time of payment, and with it the statute, begins to run at once.

If, however, the debt is not absolutely or presently due, but either the obligation to pay or the time of payment is contingent on the performance of some act, the happening of some event or the lapse of a specified period of time, then the happening of the event is a condition precedent to the present obligation to pay and the debtor is not in default, nor the creditor entitled to call for performance until the condition is fulfilled and the statute cannot begin to run until that time.

These principles are of uniform application and lie at the foundation of all our cases. Applying them to the present case it is plain that where a subscription to stock is not presently payable in full, but by its terms is to be payable from time to time as called for by the company, there is no substantial basis for the existence of a third rule, as queried in Swearingen v. Dairy Co., 198 Pa. 68. Until such call, there is no obligation on the stockholder to pay. It may never be made. If the enterprise is successful and profitable from the start, or the provision for capital has been larger than actual needs require, the duty of payment is only a reserve duty for possible contingencies, and until they happen, either by calls by the corporation on the subscriptions, or by the rights of creditors, there is no duty of the subscriber to pay, no right of action against him for nonpayment, and no starting point for the statute of limitations.

As already said, the principles at the basis of the decisions are clear and undisputed, and the later and more authoritative cases have tended distinctly to rest upon them. We conclude, therefore, that R. R. Co. v. Byers, 32 Pa. 22; McCully v. R. R. Co., 32 Pa. 25; R. R. Co. v. Graham, 36 Pa. 77, and the cases which have followed them, are not authorities for a gen-

eral rule in cases of subscriptions to corporate stock, but must be sustained, if at all, as exceptions resting on their own peculiar facts of abandonment of the corporate enterprise, which released the subscriber's contract to pay further. The court below was right in applying the general rule to this case.

Decree affirmed.