UNITED STATES SMELTING CO. v. HOFKIN et al.

(District Court, E. D. Pennsylvania. October 25, 1917.)

No. 1703.

1. CORPORATIONS ⊚═➠326—DIRECTORS' LIABILITY—STATUTORY PROVISIONS—LIBERAL OR STRICT CONSTRUCTION.

Act Pa. April 29, 1874 (P. L. 73), making corporate directors individually liable for debts where they have declared a dividend while the company was insolvent, is both penal and remedial, and is to be so construed as to make it effective where it applies, but not to extend its application beyond the cases set forth.

2. CORPORATIONS ⊚═➠334—LIABILITY OF DIRECTORS—WRONGFUL PAYMENT OF DIVIDEND—"INSOLVENT."

Under Act Pa. April 29, 1874, directors of a corporation, who vote a dividend to themselves, knowing that the moneys thus paid out are needed to meet the demands of those with whom the company has contractual relations, are individually responsible to creditors, especially if the dividend is declared by the directors for the purpose of benefiting themselves,

to the loss of creditors; a corporation whose finances are in this condition being insolvent within the meaning of the statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvent.]

3. CORPORATIONS ⬳340(2)—LIABILITY OF DIRECTORS—DEBTS INCLUDED.

Act Pa. April 29, 1874, imposing liability on corporate directors, declaring a dividend when the company is insolvent, for all debts of the company then existing and for all thereafter contracted, includes an executory contractual obligation of the corporation on which there is no existing debt when the dividend is declared.

4. CORPORATIONS ⬳360(1)—LIABILITY OF DIRECTORS—ACTIONS TO ENFORCE— PLEADING.

In a suit by a creditor of a corporation against its directors, a bill of complaint, alleging that defendants, knowing that a large sum of money would soon become payable to plaintiff under its contracts with the corporation and that the corporation was in consequence insolvent, diverted a large part of the assets to themselves and other stockholders by declaring a dividend of 500 per cent. and then applying for a receivership, as a result of which the creditors got nothing, sufficiently showed that the corporation was insolvent.

5. CORPORATIONS ⬳334—LIABILITY OF DIRECTORS—WRONGFUL PAYMENT OF DIVIDEND.

Under Act Pa. April 29, 1874, the existence of an outstanding executory contract will not of itself halt the payment of dividends by the corporation, though insolvency results from executory contracts existing when the dividend is declared.

6. COURTS ⬳343—FEDERAL COURTS—EQUITY RULES—PARTIES.

Under the equity rules, a corporate creditor, suing directors to enforce their statutory liability under Act Pa. April 29, 1874, may sue on behalf of all other creditors having the same cause of complaint, and by the bill tender them an opportunity to become parties.

In Equity. Suit by the United States Smelting Company against Mendal Hopkins and others. On motion to dismiss the bill of complaint. Motion denied.

R. Stuart Smith, of Philadelphia, Pa., for plaintiff.

Alfred Aarons and Alex. Simpson, Jr., both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. The substantial evidentiary and ultimate fact averments of this bill are that the defendants, knowing that a large sum of money would soon become payable to the plaintiff under its contracts with the corporation, of which the defendants were directors, and that the corporation was in consequence insolvent, diverted a large part of the assets of the corporation to themselves and other stockholders through and by the fraudulent device of declaring a dividend of 500 per cent. on the capital stock of the company, and following this with a successful application to have the affairs of the company placed in the hands of a receiver. The practical result is that the creditors get nothing, and the stockholders receive in the one dividend five times the total of the capital stock.

One of the prayers of the bill is that the directors be decreed individually liable for the debts as provided in the Pennsylvania act of assembly approved April 29, 1874 (P. L. 73), upon the finding that

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

245 F.—57

the company was insolvent when the dividend was declared and paid by the directors to themselves and others. There is also a prayer for general relief.

The law has its policies, as well as its principles of justice. The development of our system of laws through and by the formulation of legal principles by the courts and by legislative enactments shows a continued effort to get these principles of justice in accord with a sound policy of the law. The former calls upon all debtors to pay their debts. The adoption of the latter recognizes that capital is timid, and hence the wisdom of permitting persons who have money to put into business ventures to combine their capital without other risk than its loss. The swing from one extreme to the other may be traced from the principle of the liability of partners in solido, through limited partnerships and joint-stock companies, corporations in which some measure of personal liability is imposed upon their members, to the class of corporations in which no individual responsibility is incurred by stockholders or managers for the debts of the corporation as such.

[1] The necessity of safeguarding creditors has resulted in a variety of legislative acts, of which the act of assembly cited is one. Once given the conception of the legal entity of the corporation as distinct from that of its individual members, we start with the principle of the absence of this individual liability, except to the extent to which it is imposed by statute. As the imposition of liability is usually based upon some impropriety of conduct, some act of omission or commission on the part of the individual, we get the thought that these provisions partake of the penal, and import into them from the principles governing the construction of punitive statutes, the one calling for a strict construction. Inasmuch, however, as such provisions are written into our laws in order to protect the principle of exemption from individual liability against abuse they partake also to that extent of the nature of remedial statutes.

The rule of construction, in consequence, is to give them the meaning which will make them effective where they apply, but not to extend the application beyond the cases set forth. This act of assembly is expressive of two thoughts so far as affects the points now in controversy. One is that a dividend may be declared and paid at a time when the corporation is insolvent. The other is that the directors authorizing such payment shall be liable (up to the amount of such dividend) "for all the debts of the company then existing and for all thereafter contracted."

[2] There is no statutory definition of insolvency given in the act. We must, therefore, find in what sense the word is used. It was obviously used in the sense of expressing the evil which the act was intended to suppress. That evil was that assets which should be preserved to meet the demands of those who dealt with the corporation as its creditors might be diverted to the pockets of its stockholders. It is to be observed that the act does not in terms make the liability turn upon the fact of the directors having knowledge of the insolvency but upon the fact of the insolvency. None the less, directors who had in good faith declared and paid a dividend upon the reasonable assumption of there being surplus earnings to be distrib-

uted, and without thought or reasonable grounds to believe that the moneys thus paid out in dividends were at the time needed to meet the future demands of creditors whose claims were not then payable, such dividend would not be within the provisions of the statute. By the same token, however, if they voted a dividend to themselves, knowing that the moneys to be thus paid out were then needed to meet the demands of those with whom the company had contractual relations, such directors would be individually responsible to creditors, and emphatically so if the dividend was declared by the directors for the purpose of benefiting themselves to the loss of creditors. It is precisely this conduct with which these defendants are charged in this bill, and we think a corporation, the finances of which were in the condition indicated, is at the time insolvent within the meaning of this act of assembly. The liability (limited to the amount of the dividend so declared) is to any one who is then a creditor, or who may thereafter become a creditor during the term of service of the director charged with the payment of the debt.

[3] The words of the statute extend the liability so as to include all "debts of the company then existing and for all thereafter contracted." This phraseology is broad enough to include the claims asserted by the plaintiffs. In a strictly technical sense, one with whom a corporation has contracted, but whose contract is still in the purely executory stage, holds the contractual obligation of the corporation; but there can be said to be no existing debt. Such a construction would fairly be characterized, however, as narrow, and the language of the statute is broad and embracing. The purpose we think clearly was, and the language chosen has clearly expressed the meaning of that purpose to be, that if the directors thus unlawfully diverted a sum of money which was required to meet an obligation which had been then incurred, or if, after having depleted the assets of the corporation by the payment of a dividend, others were lured into becoming creditors of the company, the directors guilty of this depletion are required by the statute to restore creditors to the position in which they would have been had such unlawful dividend not been declared and paid. Whether it was unlawful or not depends, as already stated, upon the financial condition of the corporation at the time the dividend was declared. This is a fact, the existence of which is averred by the averment of insolvency, and, unless admitted, is a trial fact to be proven by the plaintiff. The legal consequences which follow such finding of fact are a trial conclusion and cannot be reached through a demurrer, the equivalent of which a motion to dismiss is.

[4] The suggested necessity of denying the present motion would be conceded by the learned counsel for defendants if the averments of the bill had been confined to the simple averment of insolvency. Inasmuch, however, as the plaintiff has set forth certain definite evidentiary facts, the position is taken that the averment of insolvency is an inference deduced from those facts, and, if the inference is unjustified, its correctness can be challenged through this motion. This view, however, ignores the averment of the guilty knowledge and purpose of the directors in paying the dividend. With this element in the case, we refuse to find that the company, under the averments of the bill

of complaint was at the time not insolvent, and, in consequence, deny the motion to dismiss the bill.

The foregoing comments, so far as they touch the merits of the case, of course, refer solely to the averments of the bill. The real facts will be disclosed at the trial. All which is now ruled is that the plaintiff may put its case to its proofs.

[5] The further comment is perhaps not out of place that there is no thought of holding directors to a standard of liability based upon a condition of insolvency at the time of the payment of the dividend which, however, was not disclosed until afterwards, although insolvency resulted from contracts then existing in the executory stage. In other words, the existence of an outstanding executory contract will not of itself halt the payment of dividends.

[6] The other grounds of the motion go to the formalities of the bill. The criticism of the form of the bill is based upon a view which ignores the special character of the cause of action which this bill asserts. Chancery practice, under the equity rules applicable, sanctions the bringing of a bill of complaint by one of a class on his own behalf and on behalf of all others having the same cause of complaint who may become parties and the bill may properly tender an opportunity to them to become parties. This is what the plaintiff has done. This, moreover, is an attempt to assert a special right of action conferred by statute, and the procedure prescribed by the statute or indicated by necessity may be followed. The right of action given by this statute is not the right to visit upon the defendants a liability to pay the debt due to the plaintiff, but to require them to meet by payment the claims of two classes of creditors with the total payment to be made, limited to and thus measured in its aggregate by the amount of the unlawful dividend. Of course, as a general proposition, no one can be made a litigant without his consent. Gravenstine's Appeal, 49 Pa. 310. And this plaintiff cannot use the names of others as complainants in this bill without their sanction. This, however, is an entirely different thing from the averments which this bill makes that the plaintiff belongs to a class of creditors made up of themselves and others to whom belongs the right to have from the defendants payment of all their claims up to the limit of the liability asserted. It may well be that a finding of who are the other creditors, with the sums of their respective claims and the aggregate of all of them, may be necessary to enter the decree commanded by the equities of the case as disclosed by the proofs.

The motion to dismiss is accordingly denied, with leave to the defendants to answer over.