216

## Ryan v. Cassatt et al.

*Frederick H. Spotts*, of *Pepper, Bodine, Stokes & Schoch*, for plaintiff.

*Murray Forst Thompson*, of *Saul, Ewing, Remick & Saul*, and *David H. Frantz* and *Thomas Reath, Jr.*, of *Drinker, Biddle & Reath*, for defendants.

KUN, J., January 4, 1933.—This is a suit brought by bill in equity on behalf of the creditors and bondholders of the Bankers Joint Stock Land Bank of Milwaukee to enforce the stockholders' liability under the provisions of section sixteen of the Federal Farm Loan Act.

The Bankers Joint Stock Land Bank of Milwaukee is a corporation duly formed and organized under the provisions of the Federal Farm Loan Act of Congress of July 17, 1916 (39 Stat. at L. 360; 12 U. S. C. §§ 641 et seq.), as amended. On July 1, 1927, the Federal Farm Loan Board declared the Bankers Joint Stock Land Bank of Milwaukee insolvent and appointed Howard Green, of Milwaukee, Wis., as the receiver provided for in section twenty-nine of the act. At the time the bank closed there were issued and outstanding in the hands of various shareholders 12,000 shares of capital stock, having a par value of $100 per share. The defendant McHose was the holder of five shares of the stock, and the defendant Cassatt & Co. was the holder of ten shares of this stock.

At the time of the failure the Bankers Joint Stock Land Bank of Milwaukee had issued and there were outstanding bonds in excess of $15,000,000, all of which were the obligations of the bank. The plaintiff is bringing this suit on behalf of himself as a bondholder and all other creditors and bondholders.

Section sixteen of the Federal Farm Loan Act (12 U. S. C. § 812) provides, inter alia, as follows: "Shareholders of every joint-stock land bank organized under this chapter shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such bank to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares."

After the Federal Farm Loan Board had appointed Howard Green the receiver provided for in section twenty-nine of the Federal Farm Loan Act, he brought an action at law in the United States District Court for the Eastern District of Wisconsin against one J. R. Wheeler, a stockholder, for the purpose of enforcing the liability provided in section sixteen. The case was carried to the United States Supreme Court, which held in Wheeler *v.* Greene, Receiver,

280 U. S. 49 (1929), that the receiver appointed by the Federal Farm Loan Board under section twenty-nine of the act had no right to enforce the shareholders' liability. In the words of the Supreme Court: "The receiver had power to collect the assets of the bank, but the liability of stockholders is no part of those assets. It is a liability to creditors which the creditors may be left to enforce."

Following the decision of the United States Supreme Court, on February 15, 1930, the National Exchange Bank of Milwaukee (now the Marine National Exchange Bank) was appointed a receiver of the Bankers Joint Stock Land Bank of Milwaukee "for the receipt of funds derived from stockholders' liabilities of said Bankers Joint Stock Land Bank."

On March 17, 1931, the United States District Court for the Eastern District of Wisconsin levied an assessment upon all the shareholders of the Bankers Joint Stock Land Bank of Milwaukee equally and ratably for the full amount of the par value of the capital stock held by each of them, with interest at six per cent. from May 23, 1928.

By decree dated August 4, 1932, entered by the United States District Court for the Eastern District of Wisconsin, Ryan was authorized to file the bill in this case as ancillary to the original bill in Wisconsin to enforce the liability of the shareholders located in this jurisdiction.

The defendants have each on preliminary objections to the bill raised the questions of the jurisdiction of the court of the cause, and the right of the plaintiff to join them as defendants, contending that the bill on that ground is multifarious.

It is clear that the plaintiff could have no right as an individual to collect the shareholders' liability from any shareholder. As held by the United States Supreme Court in Wheeler v. Greene, supra, that right belongs to all the creditors of the bank as a group. Though theoretically all the creditors could be joined as parties plaintiff in a suit at law, the obvious inconvenience and impracticability of such a procedure has resulted in the well-recognized proposition that in such a situation the proper proceeding is in equity by what is known as a class bill, wherein one or more of the class files a bill on his or their behalf and in behalf of all the others in the class, and this applies whether the group or class may be the parties plaintiff or the parties defendant: Supreme Tribe of Ben-Hur v. Cauble et al., 255 U. S. 356; United States Smelting Co. v. Hofkin et al., 245 F. 896; Maisch v. Order of Americus, 223 Pa. 199; Oster v. Brotherhood of Locomotive F. & E. et al., 271 Pa. 419.

When, therefore, the plaintiff, by decree of the United States District Court of Wisconsin, as appears by the bill filed, was authorized "to sue on his own behalf and on behalf of all the other bondholders and creditors of the Bankers Joint Stock Land Bank of Milwaukee in the courts of the State of Pennsylvania to enforce liability of the shareholders," the court of equity of this jurisdiction was the only one in which such a suit could properly be brought.

This brings us to the next objection raised by the defendants, that the bill is multifarious because of the alleged misjoinder of the parties defendant. While there have been some conflicting views expressed on this question in other jurisdictions, it has been settled by the cases in Pennsylvania against the contention of the defendants. In Cushing v. Perot, 175 Pa. 66, there was an action brought in Pennsylvania by a foreign creditor of a foreign (Kansas) corporation to enforce double liability against a shareholder, a citizen of Pennsylvania. The court held that the receiver who had been appointed in Kansas was the proper party to bring the suit, adding, however, at page seventy-four, the following:

"As to the mode of enforcement the decisions of the Supreme Court of Kansas seem to have settled that the statute contemplates a separate action at law against each stockholder: Abbey *v.* Dry Goods Co., 44 Kans. 415; Howell *v.* Bank, 52 Kans.133. The courts of some other states however, notably of Massachusetts, have refused to sustain such actions, on the ground that the relations of the creditors and of the stockholders among themselves cannot be properly determined in that way. Certainly by far the most convenient and just method is by bill in equity to which all the stockholders can be made parties and their rights settled. This is the established mode of procedure in Pennsylvania in analogous cases."

It is to be noted that this case is rather decisive as to both contentions made by defendants herein in holding that a claim of the kind under consideration can more conveniently and more properly be brought by bill in equity in which all the stockholders can be made parties and their rights settled.

While the view of the court as above expressed may be referred to as dictum in that case, the question was specifically raised and litigated in the case of Cook & Earl, Assignees, *v.* Carpenter et al., 12 Dist. R. 483, affirmed in 212 Pa. 165. In that case, a bill was filed by the assignees for the benefit of creditors of an insolvent trust company to recover the balance of unpaid subscriptions to the capital stock of the company. As the bill showed in that case, the assignees had in fact filed separate suits at law against the shareholders, to which numerous defenses had been set up, but, it becoming manifest that the determination of one or more of the suits at law would have no legal effect with regard to the determination of the remaining suits, they were all discontinued (excepting one pending in a foreign jurisdiction) and a bill was filed against all the stockholders because the redress sought would in that way be more complete and adequate. Because of the large number of defendants in the case, appearances for the defendants, as noted in the district court report, furnish almost a roster of the leading members of the Philadelphia Bar at that time, from which counsel for the plaintiffs as well could not be omitted. Quite naturally, the jurisdiction of the court was attacked, because of the varying defenses both on the facts and on law questions which were interposed by the more than forty defendants. This was before the new equity rules, under which that question can be raised, as it was in the instant case, in limine. The Supreme Court, in affirming, adopted, at page 168, the following language of Sulzberger, J., of the court below:

"There are more than forty defendants. Most of them live within the jurisdiction, some do not, and it is quite conceivable that there might be hundreds living without the jurisdiction not reachable by our process at law. The question involved in all the cases is substantially the same, namely, ought the corporation to collect in its unpaid capital? It is a pure question of law, and may be decided once for all in one suit as well as in a thousand. If the balance should not be collected from all, then it ought not to be collected from any. If, on the other hand, it should be collected, then none should escape."

Mr. Chief Justice Mitchell, who wrote the opinion for the Supreme Court, added on the same page: "The question in such cases turns on the completeness, adequacy and convenience of the remedy at law, and our decisions have been liberal in the consideration of all these elements." This thought was translated into the provision in Rule 36 of the Equity Rules, providing, in effect, that, though the liability claimed cannot be asserted against all the material defendants named, yet the causes will be heard in one suit if "sufficient grounds are shown for uniting the causes of action, in order to promote the convenient administration of justice." The jurisdiction of the court was sustained.

A similar view was adopted in Blair *v.* Newbegin et al., 65 Ohio 425, 62 N. E. 1040, disagreeing with the Kansas view as our courts have, and quoting, at page 438, from 1 Pomeroy on Equity Jurisprudence, Sec. 269, wherein it is indicated that such a suit as this is maintainable in equity against several shareholders, on the theory that though they have no common title or community of interest in the subject matter, yet there is, and it is because there is, a community of interest among them in questions of law and fact in the general controversy or in the form of relief demanded against each of them.

The same view was adopted in McMillen *v.* Anderson et al., 282 F. 675, in the District Court of Iowa, the court saying, at page 679:

"I think, too, that a casual consideration of this entire situation must convince that there is a community of interest among the defendants in every question of law and of fact presented by the controversy, and there can be no question but that the convenience of all parties will be best served by the determination of these issues here in a single suit than by repeated decisions of them in hundreds of separate actions at law."

The Federal cases which have been cited as expressing the contrary view are legalistic and not in harmony with the liberality in affording equitable relief in Pennsylvania, where it is found to be more complete and more adequate and more convenient than the remedy at law. This marks the difference between the views of Mr. Justice Peckham in Hale *v.* Allinson, 188 U. S. 56, and those of Sulzberger, J., and Mr. Chief Justice Mitchell in the cited cases. In Pennsylvania, equitable relief has been afforded wherever practicable. A striking example of such liberality, and what may be referred to as a case of extreme liberality, may be found in the case of Lafean et al. *v.* American Caramel Co., 271 Pa. 276, where two apparently distinct and different complainants were permitted to maintain a bill against the defendant for what in effect was a claim for breach of contract of employment, though involving certain stock transactions, and while an accounting was asked for this did not go to the question of misjoinder of the plaintiffs, that is, that the bill was multifarious on that ground. The court took the view that because the matters complained of were of the same nature and all grew out of the same transaction, the bill was sustainable, saying (at page 283) that "the question of multifariousness is one of convenience and very much within the discretion of the court." The ruling in this case shows that rules of practice are guides only and not always limitations. Equity Rule 36 specifically provides that so far as the joinder of plaintiffs is concerned (differing somewhat from the joinder of defendants thereinafter referred to), "if there is more than one plaintiff, the causes of action included must be joint." In the case cited, the plaintiffs were permitted to join though their causes of action were not joint.

Counsel on each side of the controversy before the court has cited the recent case of Komenarsky, Receiver, *v.* Brode et al., 307 Pa. 156, as sustaining his contention. The plaintiff points to the expression of Mr. Justice Kephart in the case at page 159 as follows: "No bill is multifarious that presents a common point in litigation, the decision of which will affect the entire subject-matter." The defendants point as sustaining their view to the expression further on in the opinion on the same page as follows: "The action being against two defendants who might have and no doubt would have different defenses, the bill would . . . be multifarious." The writer of the opinion in that case added, "however, there are other matters in the bill," and so it is seen that a case under consideration cannot be decided on disconnected statements made in other cases taken out of their context.

We have seen that the mere fact that defendants might have different defenses is no basis for holding the bill against them to be multifarious, so as to result in

ousting the jurisdiction of the court. Precisely the contrary was ruled in the case of Cook & Earl *v.* Carpenter, supra, where there were more than forty defendants with varying defenses.

We may add one concluding thought. It seems to us that the basis of the right of a defendant to object to his being joined with another defendant in a suit is that it would be to his prejudice to have the case against him tried with the case against the other. However, in such a case as the one before us it is clear to us that there must be a community of interest between the defendants on the questions of law and fact involved in the general controversy as to their liability as shareholders which would make it more convenient to have the matter determined in one suit. But if it should appear on their separate answers when filed that either of them cannot conveniently be heard with the other, or that it would be prejudicial in any way to have his case heard with that of the other, the court may allow a severance under Equity Rule 36 for the purposes of trial. It is hardly necessary to point out that this very provision in the rule contemplates cases wherein the defendants might have different defenses, requiring severances for trial, not only as a matter of greater convenience, but to do justice in the cause to all the parties, each in his own right.

The preliminary objections to the bill filed by the defendants are overruled and they are required to file answers to the bill within thirty days, otherwise the bill may be taken pro confesso according to rule.